**Jarvis E. WILLIAMS, D.V.M., Appellant,**

v.

**Vance C. PREMAN and Vance C. Preman, a professional corporation, Respondent.**

**No. WD 50331.**

Missouri Court of Appeals, Western District.

Nov. 14, 1995.

Respondent's Motion for Dismissal Denied Dec. 26, 1995.

Modified on Court's Own Motion Dec. 26, 1995.

Gregg Lombardi, Kansas City, for appellant.

David R. Buchanan, John S. Rollins, Kansas City, for respondent.

Before SPINDEN, P.J., and
BRECKENRIDGE and SMART, JJ.

SMART, Judge.

The facts of this legal malpractice case defy quick description. The case involves, *inter alia,* issues of proximate cause related to the damages sustained by a party in litigation when that party, after allegedly wrongful conduct by that party's attorney, voluntarily settles the matter in litigation and then attempts to pass the cost of the settlement along to the defendant attorney.

Jarvis Williams, a veterinarian, engaged Vance Preman, an attorney, to represent him in a bankruptcy. In pursuit of his duties, Mr. Preman prepared certain documents, including schedules of debts and assets, to be filed in United States Bankruptcy Court. The documents prepared showed debts of over $860,000 and assets of $9,500. $7,500 was listed as the value of equipment and supplies used in the veterinary practice of Dr. Williams. The forms listed no bank accounts, no inventory, and no accounts receivable. The form listed three vehicles, having a total value of $1,000, and household goods having a total value of $1,000. In another location, the forms indicated that accounts receivable had been assigned to a bank as collateral. At the 341 meeting of creditors, Dr. Williams disclosed that his veterinary business did have various assets, although the assets were encumbered by the security interest of a bank. Dr. Williams acknowledged that he had $7,291 in his business bank account at Citizen's–Jackson County State Bank as of April 30, 1991, the date of filing his voluntary petition. Dr. Williams also disclosed that, of the three vehicles listed as having an aggregate value of $1,000, one of the three was sold subsequent to the filing for $1,600. Dr. Williams also stated that he cashed an IRA and a small cash value life insurance policy ($595) near the time of the filing and paid cash for a vehicle. These items were not shown in any documents.

After the 341 meeting of creditors, one of the creditors, Dr. Wayne Bradley, filed an objection to discharge in an attempt to block the discharge of Dr. Williams under 11 U.S.C. § 727 on the ground that Dr. Williams was guilty of intentional concealment of assets. Mr. Preman prepared an answer to Bradley's complaint, admitting that certain items were not disclosed, but asserting that the items in question had no value, or were "collateralized to a secured creditor, Citizen's–Jackson County State Bank," and that, in addition, "amounts in any bank accounts had been seized by the Internal Revenue Service." He contended that the veterinary practice had no value and that the inventory of pharmaceuticals had no value and were subject to the security interest of Citizen's–Jackson County State Bank. Subsequent to the filing of the answer to the objection to discharge by Dr. Williams, and subsequent to additional discovery which took place pursuant to the adversary litigation framed by Dr. Bradley's complaint, Dr. Williams engaged a new attorney, S.W. Longan, III. Mr. Longan filed a motion for summary judgment on Dr. Bradley's objection to discharge. In that motion, Dr. Williams contended that he had fully disclosed his property and assets to Mr. Preman, and that the forms and schedules had been completed by Mr. Preman, upon whom Dr. Williams had relied. Dr. Williams claimed that the discharge should not be denied him because he was simply relying upon Mr. Preman to properly complete all documents. Dr. Williams also contended that the omissions in question were not material.

Dr. Bradley filed his response to Dr. Williams' motion for summary judgment. Included among the affidavits filed by Dr. Bradley to counter Dr. Williams' motion was an affidavit executed by Mr. Preman, Dr. Williams' former attorney. Dr. Williams and Dr. Bradley each had requested a supporting affidavit from Mr. Preman, but Mr. Preman declined to provide one to Dr. Williams and instead provided one to Dr. Bradley. The affidavit of Mr. Preman stated that he advised Dr. Williams that all assets needed to be disclosed, regardless of whether they were subject to an encumbrance or were claimed to be exempt. He said that any

assets not disclosed on the schedules would not have been disclosed to him. The affidavit denied that the non-disclosure of assets was based upon Mr. Preman's advice:

> Dr. Williams' assertion that he failed to list all of the foregoing assets, property, income and/or transfers based upon my advice is untrue. I took care in preparing Dr. Williams' bankruptcy schedules. I reviewed the schedules with Dr. Williams very carefully and explained to him the importance of fully disclosing all property, assets, income and transfers. Dr. Williams signed the voluntary petition and declared it to be true and correct. Dr. Williams' statement that any omissions and misstatements contained in the bankruptcy schedules were based upon my advice, is simply baseless.

The motion of Dr. Williams for summary judgment based upon "advice of counsel" was denied. Thereafter, Dr. Williams agreed to settle with Dr. Bradley by excluding from the discharge the debts owed to Dr. Bradley, which exceeded $66,000. The unsecured debts owed to the other creditors were all discharged.

Thereafter, Dr. Williams brought an action against Mr. Preman and against Mr. Preman's professional corporation (collectively referred to as Mr. Preman). Dr. Williams asserted that Mr. Preman was guilty of legal malpractice in that the bankruptcy schedules did not list all of plaintiff's assets. Plaintiff Williams asserted that Mr. Preman advised him that the "numerous encumbered assets and assets which [Mr. Preman] deemed to be of little value" did not need to be listed as assets in the bankruptcy, whereas, in fact, under the law they were required to be listed. Plaintiff further contended that Mr. Preman failed subsequently to amend the schedules to correct deficiencies in the list of assets. Also included in Dr. Williams' petition was a claim for breach of fiduciary duty, in which plaintiff asserted that Mr. Preman breached his fiduciary duty of loyalty to Dr. Williams by assisting Dr. Bradley's prosecution of the adversarial action against Dr. Williams. Dr. Williams claimed that Preman wrongfully assisted Bradley by providing an affidavit which "contained numerous mis-

statements of fact, and that Mr. Preman knew the statements were false at the time he executed the affidavit." Williams alleged that, due to the provision of Preman's affidavit, his motion for summary judgment in the bankruptcy court was denied, causing Williams to incur damages, including additional attorneys fees and expenses. Defendant Preman denied liability.

At trial, at the close of the evidence, the trial court granted Defendant Preman a directed verdict on the claim of breach of fiduciary duty. The court also granted a partial directed verdict as to the legal malpractice claim, ruling that plaintiff was not entitled to submit as part of his damages the amount of the settlement involving Dr. Bradley ($66,972.00). The claim of legal malpractice was submitted to the jury as to the attorneys fees ($35,383.54) incurred in defending the objection to discharge. After deliberation, the jury returned a verdict for Defendant Preman on the legal malpractice claim. Plaintiff appeals.

### The "Case Within a Case"

Plaintiff first contends on appeal that the trial court erred in denying him the right to submit to the jury his claim of breach of fiduciary duty. Williams claims that there was substantial evidence to support each element of the claim. The record shows that the trial court concluded that Williams had failed to show that any damages were caused by any action of Mr. Preman because Dr. Williams had settled the underlying claim brought by Dr. Bradley. The trial court noted that, because the alleged damages are based on the resolution of the underlying action in the bankruptcy court, the plaintiff must prove a "case within a case." The court stated that Plaintiff Williams must prove that the actions of Mr. Preman "would have caused plaintiff to lose the objection to discharge and thereby cause plaintiff to lose the discharge itself." The trial court, considering the evidence of the case within a case, found that Williams would have prevailed over the objection to discharge if it had been tried rather than settled. The court found that there was no evidence presented to the court which tended to prove that plaintiff

executed the schedules with fraudulent intent and that plaintiff's bankruptcy expert "specifically testified that he believed plaintiff would have prevailed in the objection to discharge if it had been tried rather than settled." The court also found that "any deficiencies in the schedules were immaterial, and the objecting creditor was on notice as to the existence of the additional assets anyway." The court ruled, therefore, that any damages relating to the settlement of the objection to discharge "have no causal connection to any acts or omissions of defendant." The court entered judgment for defendant on the claim of breach of fiduciary duty.

### The Fact–Finder in the Underlying Case

An implicit issue in this appeal is whether the trial court was correct in determining that the resolution of the "case within a case" was for the court and not for the jury. This issue arose in *Calhoun v. Lang,* 694 S.W.2d 740 (Mo.App.1985). In an underlying employment discrimination case, the attorneys representing plaintiff failed to respond to discovery orders, and the court dismissed the case with prejudice. Plaintiff then brought his claim for legal malpractice against his former attorneys. Defendants in the malpractice suit sought bifurcation of the trial on the theory that plaintiff must first relitigate the underlying lawsuit in order to establish that the underlying suit was meritorious. The trial court decided that the underlying lawsuit was intended to be an action under the Civil Rights Act of 1972 (Title VII), and that because Title VII claims are tried to the court rather than a jury, the fact finder on the underlying claim should be a judge rather than a jury. Plaintiff contended on appeal that the trial court erred in denying plaintiff the right to a jury trial of the issues. The court of appeals *expressly declined* to accept the notion that, if the only underlying claim had been a non-jury action, the proper thing would have been for the issue of the merit of the underlying claim to have been tried to the court rather than the jury:

> We entertain some considerable doubts that "re-creation" of the original suit requires that a judge rather than a jury pass on the merits of plaintiff's original claim.

Mo. Const. Art. I, Sec. 22(a). *See Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (banc 1977) and Mallen and Levit, Legal Malpractice, 2d. Ed., Sec. 672 for differing positions on this question. We do not, however, need to decide the issue. Our reading of plaintiff's petition in the malpractice action does not persuade us that he sought relief solely because of negligent handling of the Title VII [non-jury] claim. *Id.* at 742. We conclude, therefore, that a careful reading of *Calhoun v. Lang* provides no authority for the proposition that the trial court should assume the role of fact finder whenever the underlying case involves a nonjury claim. Also, we have found no Missouri authority which has directly taken up and explicitly resolved the issue which *Calhoun v. Lang* was able to avoid. In *Baldridge v. Lacks,* 883 S.W.2d 947 (Mo.App.1994) and *London v. Weitzman,* 884 S.W.2d 674 (Mo. App.1994), which were both attorney malpractice cases involving underlying dissolution proceedings, the court regarded the issue of damages in the distribution of property as submissible to the jury. There is no indication in *Baldridge* or *London* that anyone contended the issue should have been tried to a judge, so the issue was not squarely presented. Cases in other jurisdictions have reached various results. In *McLeod v. Fechtel,* 821 F.2d 1388 (9th Cir.1987), the court held that the issue of how a reasonable judge would have divided marital property raised only a question of law to be decided by the court. In contrast, *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (banc 1977) (which was mentioned in the *Calhoun* opinion) involved an underlying claim which was a probate matter. The court in *Chocktoot* decided that the issue of the merit of the underlying claim should be tried to a jury, and that the jury should apply an objective standard (what a reasonable result of the litigation would have been). A similar view was expressed in *Justice v. Carter,* 972 F.2d 951 (8th Cir.1992), where the court said that the jury could decide the merit of an underlying bankruptcy action.

Although the issue at hand in the malpractice case is a determination of the outcome of the underlying bankruptcy case, the jury in the malpractice case is permitted to decide this by substituting its judgment for the judgment of the factfinder, be it jury or judge, in the earlier case.... We are confident that the second jury, bombarded with facts and expert opinions, and properly instructed on the law, could reasonably and soundly apply the law to the facts and resolve the issue of what a *reasonable judge* would have decided.

(emphasis in original). *Id.* at 957. Proximate cause issues are generally (except in clear cases) issues of fact. When they are questions of fact, the plaintiff has a basic right to a trial of the issues by jury. Mo. Const., Art. I, § 22(a). We conclude, in view of all the foregoing, that the jury, and not the trial court, would have been the proper fact finder in this case on the issue of damages. Therefore, we review these contentions on appeal as though the trial court had granted defendant a directed verdict in a jury tried case, because the effect of the trial court rulings was to keep these issues from the jury. A directed verdict for defendant is appropriate only where, even when the evidence is viewed in the light most favorable to the plaintiff, plaintiff could not recover as a matter of law. *Politte v. Union Elec. Co.,* 899 S.W.2d 590, 592 (Mo.App.1995).

### The Settlement Damages

We turn next to the trial court ruling excluding the settlement from the damages which plaintiff was entitled to submit to the jury to either claim. The plaintiff, of course, must show a sufficient causal connection between the wrongful act and the alleged damages in order to be entitled to submit the item of alleged damage to the jury. *Lange v. Marshall,* 622 S.W.2d 237, 238 (Mo.App.1981). In legal malpractice cases, it is required that plaintiff plead and prove that but for the attorney's negligence, the result of the underlying proceeding would have been different. *Bross v. Denny,* 791 S.W.2d 416, 421 (Mo.App.1990); *Boatright v. Shaw,* 804 S.W.2d 795, 796 (Mo.App. 1990). In *Lange v. Marshall,* 622 S.W.2d 237 (Mo.App.1981), suit was brought by a woman who had been represented in a dissolution proceeding by defendant attorney. In her dissolution case, after the matter had been

heard upon a settlement stipulation and was under submission, plaintiff discharged her attorney and obtained a new attorney. The new attorney reopened the case, conducted additional discovery, and the parties then entered into a new settlement. The court in *Lange* held that the plaintiff failed to make a submissible case because plaintiff did not meet her burden of establishing that the negligence of defendant proximately resulted in damage to her. The court said:

> It is the rankest conjecture and speculation to conclude that Ralph Lange's willingness to settle the marital affairs without litigation on the basis of the original settlement established his willingness to settle without litigation at a higher figure acceptable to plaintiff. Plaintiff states in her brief that it is "obvious" that upon proper representation by defendant she would have received a far more beneficial settlement in a non-contested dissolution. She points to no evidence to support this conclusion and its "obviousness" eludes us.

*Id.* at 239. The court reversed the judgment awarding Mrs. Lange a jury verdict of $74,-000.

■ In another Missouri case the Court of Appeals determined that the issue of the degree of damage caused by an allegedly negligent failure to move for a directed verdict at the close of the evidence should not be submitted to the jury because the court regarded the causation issue as too speculative. In *Heartland Stores, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39 (Mo.App.1991), Heartland Stores, Inc. sued Royal Insurance Company claiming, *inter alia*, that the attorney hired by Royal to defend Heartland in a personal injury action was guilty of negligence in failing to file a motion for directed verdict at the close of all the evidence. The judgment in the personal injury action included an award of $500,000 in punitive damages against Heartland, for which no indemnity was provided under the liability insurance policy. Heartland appealed from the judgment. During the course of the appeal, Heartland settled the punitive damage claim with the personal injury plaintiff for $169,000. Heartland, in its subsequent suit against Royal, contended that the failure of the attorney

provided by Royal to move for a directed verdict limited the issues which could be raised on appeal and solidified the position of the personal injury plaintiff, making it necessary for Heartland to settle. This court said:

> To entitle it to recover damages for negligence, it was necessary for Heartland to show that the negligence charged was the proximate cause of Heartland's loss. There must be proof of loss before the negligence issue may be submitted to the jury. Here Heartland failed to prove any loss resulted from the failure to file the motion in the [underlying] trial. There was evidence from attorneys who testified as to the consequence of the failure to file such a motion but because the case was settled before the appeal was fully prosecuted, the jury would have had to resort to speculation and guesswork in order to find that damages resulted from such failure. Without proof of damages, the instruction should not have been given.

*Id.* at 42 (citations omitted). The court indicated that, because the matter was voluntarily settled before the appeal had run its course, expert opinion as to the extent of the damage caused in that case by the failure to move for directed verdict was speculative and failed to amount to proof of damages. *Heartland* illustrates that in cases where the underlying claim has been settled, the plaintiff must carry the significant burden of establishing that the settlement was necessary to mitigate the damages flowing from defendant's negligence. It is not sufficient to argue that the defendant's negligence created additional burdens or difficulties for the litigation. There must be evidence that extra burdens or difficulties caused by the negligence could not be overcome, and would have been fatal to the result the plaintiff could otherwise have enjoyed. Plaintiff must prove that without the settlement, plaintiff would have fared significantly worse by allowing the litigation to run its course.

■ Settlement of the underlying claim creates speculation as to what could have otherwise been clear: the true merit of the underlying litigation, as distilled in the crucible of the courtroom. Of course, speculation is involved, to some extent, in many cases.

For example, an attorney experienced in domestic relations practice has been permitted, in legal malpractice cases, to offer an opinion to the jury as to the range of a fair and equitable property distribution in a dissolution case, as evidence of what a court would have decided if the attorney for plaintiff in the underlying matter had not negligently recommended an ill-advised settlement. *London v. Weitzman,* 884 S.W.2d 674, 677–78 (Mo.App.1994); *Baldridge v. Lacks,* 883 S.W.2d 947 (Mo.App.1994). Those cases are different in that there the underlying litigation was settled while the attorney who was allegedly negligent was still handling the case. In *Heartland* and *Lange* they were settled *after* dismissal of the allegedly negligent attorney, while the case was being handled by a new attorney. It thus appears that, in a case where the underlying claim has been voluntarily settled, the courts are going to require a strong showing that the settlement was justified before the court will be willing to pass the cost of the settlement on to the defendant.

When a plaintiff has compromised an underlying claim, after having notice of the attorney's alleged negligence, and attributes the loss incurred thereby to the defendant lawyer's negligence, a factor of speculation has been *voluntarily* introduced by the plaintiff which requires justification. Because the attorney who is accused of negligence is allowed no voice in whether the underlying claim is settled, such attorney ought to be entitled to require that the plaintiff *prove* that the settlement was necessary to mitigate plaintiff's alleged damages. A plaintiff may be tempted to settle the underlying claim at any figure, believing that the responsibility for the damage will be passed on to the defendant at whatever the settlement figure may be. In such a case, then, the plaintiff must show what would have happened if the adversarial action had been tried rather than settled. *London v. Weitzman,* 884 S.W.2d 674, 677 (Mo.App.1994). Then, in light of that anticipated result,

plaintiff must show that the settlement voluntarily entered into was necessary to mitigate damages, as assessed in the light of all of the circumstances known at the time of the settlement. If, however, plaintiff fails to establish a prima facie case, by cogent expert testimony which intelligently analyzes the pertinent considerations, that the defendant's negligence proximately caused the loss, the issue should not be submitted.

> While the question of proximate cause is usually for the jury, in rare cases and under clear and compelling circumstances, the question becomes one of law for the court. *Carter v. Boys' Club of Greater Kansas City,* 552 S.W.2d 327 (Mo.App. 1977) [4–6]. Where the evidence connecting the injury to the negligence amounts to mere conjecture and speculation the court must not allow the case to be submitted to the jury and a contention that the evidence did not make a submissible case should be sustained.

*Lange v. Marshall,* 622 S.W.2d 237, 238 (Mo. App.1981).

In this case, Williams stresses the argument that because the consequences of being denied a discharge were large,[1] it was therefore necessary to concede $66,000 to Bradley even though Williams might have prevailed on Bradley's objection if the matter had been tried. The mere fact that the consequences of not settling *could be* extremely harsh does not necessarily mean that settlement of a matter is necessary to mitigate damages. In the *Heartland* case, Heartland was looking at the possibility of incurring a $500,000 judgment if it lost on appeal. The basis of a decision to settle must be explicitly articulated. It is not enough to assert that plaintiffs damages are "obvious," as did the plaintiff in *Lange.* Nor is it enough to say that the defendant's negligence "solidified the position" of the opposing party and "limited the issues" on appeal, as in *Heartland.* Lawyers are trained to be thoroughly analytical, to seize upon all the

---

**1.** If the discharge were denied, Williams would have been unable to be relieved of all of the indebtedness subject to discharge. Since Williams reaffirmed over $300,000 of the debt anyway, and the Bradley debt was to be paid pursuant to the settlement, the amount of debt which would have been retained by denial of discharge if Williams had litigated and lost was approximately $450,000 or so.

pieces of the puzzle, and to reason through to a compellingly logical conclusion. When a settlement is truly necessary, attorneys will be able to demonstrate the necessity and wisdom of the settlement. The expert opinion need not be airtight or unassailable, but the subject matter must not be inherently unpredictable, and the evidence must show that the opinion is sufficiently grounded in careful and comprehensive analytical thought to have strong probative value on the issue of proximate cause. Superficial articulation of the appropriateness of a settlement will not create a submissible issue as to causation of damage resulting from a voluntary settlement.

■■■ We do not agree with Preman that the *Heartland* case means that settlement necessarily forecloses the possibility of showing a causal link between the alleged negligence and the loss incurred by the settlement. Otherwise, the victim of the alleged malpractice is completely precluded from ever settling any underlying claim. The public policy of Missouri favors settlements. *Arana v. Koerner*, 735 S.W.2d 729, 735 (Mo. App.1987). The Supreme Court of Wisconsin, in *Gustavson v. O'Brien*, 87 Wis.2d 193, 274 N.W.2d 627 (1979), considered the issue of whether a justifiable settlement of the underlying claim should be considered to cut off any causal relationship between the alleged negligence and the resulting loss. The court, in responding to the attorney's argument that the plaintiff's act of settling the underlying matter defeated any claim to damages, stated:

> The settlement was a bona fide attempt by respondents to mitigate their damages and bring the litigation to an end. In a situation such as is here presented, clients should not be forced to litigate such issues to judgment. If such were the situation the lawyer could arguably contend the clients unreasonably prolonged the litigation, thereby increasing their legal expenses, and unreasonably refused a fair settlement offer which would have mitigated their damages.

*Id.* at 631. We agree with the Wisconsin court that a settlement does not inevitably defeat the claim for damages. Therefore,

while we will require justification of a settlement before we will be willing to pass the cost of the settlement on to the malpractice defendant, we do not rule out the possibility that a plaintiff can make an adequate showing that a settlement was justified, and that therefore the cost can be passed on to the defendant. We think that litigation clients allegedly victimized by their attorney's negligence should be warned not to assume that the justification for a subsequent settlement is somehow self-proving. In most cases, part of that showing of justification must include evidence establishing that, because of defendant attorney's negligence, plaintiff would have lost the underlying litigation if it had been tried. *Boatright*, 804 S.W.2d at 796. It is not enough simply to say that defendant's negligence made a favorable result less likely. *Eddleman v. Dowd*, 648 S.W.2d 632 (Mo. App.1983) (underlying lawsuit was still pending at time trial court dismissed legal malpractice action).

In the present case, it is not disputed that, if Preman had not cooperated with Bradley by providing the affidavit, the objection to discharge would have been subject to summary disposition. Because Preman took issue with Williams' attempt to use the "advice of counsel" defense, Williams had two options: 1) attempt to overcome Preman's contrary assertions, and continue with the defense of "advice of counsel," and 2) attempt to show that, notwithstanding Preman's assertions that he told Williams to disclose everything, whether encumbered or not, the nondisclosures were inadvertent or otherwise innocent. He could defeat Bradley's objection by either method. The trial court reasoned that, regardless of Preman's affidavit contesting the notion of "advice of counsel," Bradley lacked the ability to show that Williams intentionally concealed assets. The trial court held that plaintiff failed to show that, because of defendant's wrongful actions, plaintiff would have lost if the objection to discharge had been tried.

The trial court, considering the circumstances as they appeared at the time of trial, stated to plaintiff's bankruptcy expert, Eric Rajala, that the court saw no evidence that Dr. Williams intended to hide assets, and Mr.

Rajala agreed. While we do not agree that there was *no* evidence, it seems that, apart from Preman's anticipated testimony, there was very little evidence that Dr. Williams intended to conceal assets[2]. Preman's *affidavit* was the primary item of evidence offered by Bradley to rebut Williams' assertions of innocence. Preman's affidavit is limited to conclusions. In the affidavit, Preman admits that he completed the forms. Preman does not state what assets Williams told him about, and what information was withheld. Preman does not explain why, when Bradley challenged the discharge, he filed an answer to the objection to discharge, claiming *as a defense* that the assets were "collateralized," if indeed he advised Williams all along that it made no difference that assets were encumbered by a security interest. Preman also never explains in the affidavit why he never amended the schedules. Also, the affidavit does not necessarily preclude a finding that the omissions were inadvertent on the part of Dr. Williams, as opposed to intentional.

### Justification of the Settlement

 There was no expert testimony analytically justifying the settlement between Bradley and Williams. Mr. Longan, who represented Williams in the underlying matter after Preman, testified that when Mr. Preman filed his affidavit, the defense of advice of counsel "got real weak." However, Longan testified in reference to whether Williams could defeat Bradley's objection, "*I thought we could do it,* we were definitely going to have trouble." Mr. Rajala testified that the errors on the schedules "could have prevented" a discharge, and that Dr. Williams "would have had a really difficult time overcoming the affidavit." Mr. Rajala acknowledged that he *could not predict* what the result would have been but that the likelihood of an adverse result was "much higher" because of Preman's apparent cooperation with Bradley, as evidenced by the affidavit. Mr. Longan also stated that he *did not know* whether they could overcome *the affidavit* of Mr. Preman (emphasis added). There was no testimony establishing, by careful consideration and discussion of the pertinent factors, that Williams was destined to lose his discharge as a result of Preman's anticipated adverse testimony. It is possible that Preman's testimony would have been so compelling as to devastate Williams' position and show that Williams was attempting to commit an act of fraud.[3] But how, viewing the information available *at that time,* could Williams have known it would be so compelling? The comments related to "the affidavit" ignore the fact that the affidavit itself would not have been admissible at the ultimate hearing on the issue, and that in any event the affidavit was conclusory in nature. Preman would have had to appear and testify in order to defeat Williams' claim of reliance on advice of counsel. He would have been required to undergo cross-examination. At the time of the settlement, Williams had not deposed Mr. Preman, and therefore (if Williams is telling the truth, which we as-

2. There were two types of assets omitted: (1) those which were encumbered by a security interest, or were exempt by law, and (2) items of lesser value which were not disclosed, including: a) a judgment Dr. Williams deemed uncollectible which was later discharged in bankruptcy; b) two saddles; c) an IRA account; and d) a life insurance policy. The parties have devoted no discussion to the IRA account and the life insurance policy. We understand they were cashed "near" the time of the bankruptcy filing, which does not tell us whether it was before or after the filing. Nor was there any evidence as to whether Dr. Williams was advised as to any duty of disclosure he would have if the items were cashed either before or after the bankruptcy filing. The fact that one of the vehicles was sold for $1,600, when three vehicles were listed as having a total value of $1,000, sounds suspicious, but the record provides no information as to the details of this transaction, so we are unable to conclude, without knowing more, that this represents strong evidence of fraudulent intent. The fact that Williams voluntarily acknowledged the transaction (as far as we know) would tend to undercut the suspicion that there was an intent to defraud.

3. The jury's verdict in this case may not (in view of instructional error discussed *infra*) be a perfect indicator of who the jury found more credible between Williams and Preman, but certainly Preman can suggest that, in view of the jury verdict in his favor, the jury found his testimony more credible than that of Williams. In judging the proof of justification for the settlement, however, we must view the circumstances as they were known to Williams at the time of the decision to settle.

sume for purposes of this analysis only) Williams could not have known how strong Preman's testimony would be, or precisely what he would say as to the details of his communications with Dr. Williams, and as to his completion of the schedules. The trial court could determine that, as a matter of law, plaintiff had not established that it was necessary to completely concede the underlying dispute to Dr. Bradley. Plaintiff Williams was required to explain, with cogent reasoning, why it was necessary to capitulate to Bradley based only upon the fact that Preman had provided a contrary affidavit.

█ Plaintiff argues on appeal that the testimony in behalf of Dr. Williams establishes that it was "more likely than not" that Dr. Williams would have lost. We do not see, in any Missouri case, support for the proposition that expert testimony that an unfavorable result was more likely than not will be sufficient justification for the settlement, particularly when the analysis supporting the evaluation is superficial. The test for justifying passing the cost of the settlement on to the defendant is to prove that plaintiff was driven to the necessity of settling because, if the case had not been settled, plaintiff would have been worse off. *Bross v. Denny*, 791 S.W.2d 416, 421 (Mo.App.1990). It was not sufficient in this case to suggest that the settlement was prudent because plaintiff would have had a "tough time" overcoming Preman's affidavit. *See Lange v. Marshall*, 622 S.W.2d 237 (Mo.App.1981). None of plaintiff's experts specifically predicted that plaintiff would have lost if the underlying claim had not been settled, and none discussed the particulars which would have supported such an opinion. We do not believe that a submissible case was presented on causation as to the inclusion of the Bradley settlement in the damages claimed by Williams. Consequently, the trial court did not err in excluding the amount of the settlement from any submission of the claim of breach of fiduciary duty.

Even though we conclude that the amount of the settlement is not includable in the claim, there nevertheless remains an issue as to whether the trial court erred in granting a directed verdict as to the claim of breach of

fiduciary duty. Excluding the settlement, additional issues remained related to the claim. There were other damages which Williams claims he was entitled to submit to the jury. Williams presented specific evidence that, without the Preman affidavit having been introduced, Williams would have obtained a summary judgment ruling defeating the objection to discharge. The testimony on this issue was not speculative or vague. When the summary judgment motion was denied, Williams was required to expend additional sums for attorney's fees to bring the matter to a conclusion. Consequently, we must determine whether the trial court erred in denying submission of the claim of breach of fiduciary duty.

### Fiduciary Duty

█ Although the trial judge ruled that it was proper for the court to decide the fact issues related to the merit of the underlying claim of Bradley, and the settlement damages related thereto, the trial court also, in effect, granted a directed verdict as to the entire claim of breach of fiduciary duty. Therefore, we review this action according to the standard for reviewing directed verdicts generally. As already noted, a directed verdict for a defendant is appropriate only where, when the evidence is viewed in the light most favorable to plaintiff, reasonable minds could not differ as to the correctness of that verdict. *In re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987). "Whether there is sufficient evidence to submit an issue to the jury is a legal question and not an exercise of judicial discretion." *Martin v. Pashia*, 892 S.W.2d 681, 683 (Mo.App.1994). Submission is proper where every fact essential to liability is supported by legal and substantial evidence. *Id.*

### Attorney's Duty to Client

█ Mr. Preman asserts that as a matter of law an attorney cannot be held liable for a breach of an ethical rule. Mr. Preman is correct. *Greening v. Klamen*, 652 S.W.2d 730, 734 (Mo.App.1983). However, Dr. Williams is not seeking to hold Mr. Preman liable for the violation of an ethical rule. He is seeking to hold Mr. Preman liable for

breach of fiduciary duty. "The relation between attorney and client is fiduciary and binds the attorney to a scrupulous fidelity to the cause of the client which precludes the attorney from any personal advantage from the abuse of that reposed confidence." *Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 605 (Mo.App.1983) (citing *Demmel v. Hammett*, 360 Mo. 737, 230 S.W.2d 686, 689 [1–4] (1950)). As a fiduciary, an attorney owes his client the greatest degree of loyalty, good faith and faithfulness. *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92, 96 (Mo.App.1992). Dealings between attorney and client are carefully scrutinized by the law because of the relationship of special trust and confidence that exists between attorney and client. *Shaffer*, 648 S.W.2d at 605.

Dr. Williams maintains that Mr. Preman breached this duty by preparing and submitting a false affidavit in the bankruptcy court stating that Dr. Williams' claim of reliance on counsel had no basis. Dr. Williams also contends there was substantial evidence supporting his claim, warranting submission. It is uncontested that Mr. Preman and Dr. Williams had an attorney-client relationship. Mr. Preman correctly states that the attorney-client *privilege* had been waived when Dr. Williams asserted advice of counsel as a defense to the objection lodged by Dr. Bradley. *See Johnson v. Schmidt*, 719 S.W.2d 825, 827–28 (Mo.App.1986). Such waiver is a waiver of confidentiality; however, it does not destroy the duty of loyalty an attorney owes his client. Where, as here, it is alleged that the attorney lied, to the economic disadvantage of his former client, concerning communications and transactions with the former client, in order to further or protect his own interest or reputation, the waiver of attorney-client privilege does not immunize an attorney from an action for wrongful conduct. The affidavit was alleged to be wrongful, not because it disclosed a confidential client communication, but because, according to Williams, it was falsely accusatory and thereby hindered the client's position in the bankruptcy litigation. If indeed the affidavit is false, the waiver of attorney-client privilege is irrelevant.

The fiduciary duty of an attorney may continue after the attorney-client relationship has terminated. *See Brandt v. Medical Defense Associates*, 856 S.W.2d 667 (Mo. banc 1993) (fiduciary duty of a physician forbids disclosure of medical information about patient received in connection with treatment). An attorney's breach of duty to a client during the course of representation of the client is legal malpractice, not breach of fiduciary duty as a separate tort. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624 (Mo. banc 1995). However, a breach of trust which arises out of the relationship, but occurs outside the time frame of the representation of plaintiff, could be a breach of fiduciary duty. Here, the allegedly negligent completion of the schedules was properly pleaded as legal malpractice, not breach of fiduciary duty; while the provision of the allegedly false affidavit was properly pleaded as breach of fiduciary duty, not legal malpractice. *Id.* Thus, the alleged damages for any legal malpractice in this case will be separate and distinct from the alleged damages for breach of fiduciary duty.

Dr. Williams presented evidence which, if believed by the jury, would support the theory that Mr. Preman was not truthful in his affidavit. Dr. Williams met with Mr. Preman to prepare bankruptcy schedules. He stated:

> Well, Mr. Preman pretty much knew all my assets from a variety of sources. He had been in communication with the bank, he had tax returns. I was just finishing a divorce that had lasted 3 years and we had the divorce decree with a list of all personal property and settlements. He asked me about everything that was inventoried at the clinic, if I had an inventory. He asked me about accounts receivable, personal property, anything—he wanted to know anything that was of value that might be used to set off debt.

In addition to evidence recounted by Dr. Williams, Robert Pummill, counsel for Dr. Williams' creditor, Citizens Jackson County Bank, testified that he met with Mr. Preman less than a week before the bankruptcy was filed for the purpose of discussing reaffirmation of Dr. Williams' indebtedness to the

bank. Mr. Pummill testified that the negotiations as to reaffirmation revolved around the value of the secured assets in the hands of Dr. Williams. The parties agreed to a reaffirmation in the amount of $265,000. The attorneys reviewed documents in the possession of the bank, documents photocopied by Mr. Preman. While Mr. Preman denies that the documents showed *current* assets, Mr. Pummill's testimony is consistent with Dr. Williams' assertion that Mr. Preman was not truthful in his affidavit because a jury could find that Preman negotiated as though the assets were current, and could disbelieve his denial. Thus, Williams presented a submissible case that Preman was not truthful in the affidavit.

There was also substantial evidence supporting Dr. Williams' claim that he was damaged by Mr. Preman's affidavit. The fact that Williams did not show that as a result of Preman's alleged disloyal actions, Williams would have lost the discharge if the issue had been tried, does not mean that Williams did not show he was not damaged at all by the affidavit. The summary judgment motion as to Bradley's objection was denied by the bankruptcy court, and plaintiff presented expert testimony to the effect that the affidavit of Preman was the cause of that denial. There was also testimony that, because Williams did not prevail in the motion for summary judgment, attorney's fees and expenses were incurred in attempting to defeat the objection to discharge.

### Witness Immunity

◼ Mr. Preman contends that he is immune from tort liability for statements that were made in the affidavit. He claims "witness immunity," citing *Greening v. Klamen*, 652 S.W.2d 730 (Mo.App.1983) and *Murphy v. A.A. Mathews*, 841 S.W.2d 671 (Mo. banc 1992) in support of this proposition. Neither case can be read so as to grant Mr. Preman witness immunity. In *Greening*, the defendants were being sued for breach of contract, legal malpractice and libel. The issue of witness immunity is discussed in the context of an action for libel. *Greening*, 652 S.W.2d at 734. It has no application in the instant case.

Missouri places strict limitations on the witness immunity doctrine. In discussing these limitations the court in *Murphy* explains:

> In each of the Missouri cases, the court applied the doctrine of witness immunity narrowly. Every decision was limited to subsequent actions in defamation or defamation-type lawsuits.

*Murphy*, 841 S.W.2d at 677. The court in *Murphy* considered the question of whether witness immunity acted as a bar in an action for negligence against a professional provider of litigation related services. *Id.* at 672. In declining to apply witness immunity in that situation, the court reasoned that although the failure to apply such immunity may lengthen the litigation process, "we allow just the same for malpractice actions against trial attorneys, and the analogy between the services provided by these two types of professionals suggests consistent, not inconsistent, treatment." *Id.* at 681–82. Finally, Mr. Preman does not demonstrate any compelling public policy considerations that would demand the extension of the doctrine to cases of this type. *Id.* at 677. This is not a defamation action. It is an action for breach of a duty of loyalty which an attorney owes to his client. While an attorney may be justified in truly defending himself or herself against a false accusation of negligence, in this case the contention is only that Preman was falsely defending himself from a true accusation, and that in doing so he took unjustified action in his own interest which was adverse to the interest of his former client, and in violation of the duty he owed that client.

### Legal Malpractice Claim

◼ Defendant contends that the jury's verdict on the legal malpractice claim was proper in that plaintiff failed to make a submissible case anyway, because plaintiff did not prove that Bradley would not have filed his objection to discharge if it had not been for Preman's alleged errors. We disagree with this analysis. Williams presented evidence that if the forms had been properly completed, Bradley would have had no substantive basis for any objection. The fact

that some items were omitted gave Bradley something to argue. We do not think plaintiff was obligated to prove that Bradley would not have filed an objection if the form had been properly done. Had the forms been properly completed, any objection to discharge would have been frivolous. If any omission were of an asset which was relatively inconsequential, a prompt amendment of the schedules would have persuasively indicated the omission was inadvertent, and would have defeated any objection to discharge, according to the testimony in this case.

### Contributory Negligence

Dr. Williams claims that the trial court erred in giving an instruction on contributory negligence in submitting the issue of legal malpractice to the jury. The instruction reads:

Your verdict must be for the defendants if you believe:

First, either:

plaintiff failed to disclose all of his assets to Vance Preman, or

plaintiff signed the schedules prepared by Vance Preman when he knew or should have known that they were false

Second, plaintiff, in any one or more of the respects submitted

in Paragraph First was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly

contributed to cause any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

This instruction presents the plaintiff's alleged negligent actions as a complete bar to recovery. Dr. Williams asserts that the instruction was erroneous in that comparative fault, not contributory negligence, applies in legal malpractice actions. Alternatively, Dr. Williams advances the theory that neither comparative fault nor contributory negligence applies because an attorney should not be able to reduce his liability due to the alleged negligence of his client. We need not address the intriguing issue of whether the adoption of comparative fault in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), included only cases involving bodily injury and excluded cases of purely economic damage. We agree with Dr. Williams' proposition that in this case it was improper to submit to the jury the issue of Dr. Williams' fault.

The instruction in this case relates two instances in which alleged negligence on the part of Dr. Williams purportedly acts as a bar to recovery: failure to disclose assets to Mr. Preman, and failure to correct the schedules upon reading them.

### Failure to Disclose Assets

If, as Mr. Preman asserts, he informed Dr. Williams of the significance of full disclosure, and Dr. Williams nevertheless negligently withheld information from Mr. Preman, then it is elementary that Mr. Preman could not be guilty of negligence. He could not have breached any duty to Dr. Williams. Thus, Dr. Williams' alleged failure to disclose could not be an allegation of either contributory negligence or comparative fault. Rather, access to the basic information by Mr. Preman is a condition of Dr. Williams' claim. Plaintiff's verdict director hypothesized defendant's failure to list "all the assets disclosed to [him] or which would have been discovered by reasonable investigation." This element, of course, could have been conversed by Preman. Plaintiff must prove that Preman had access to the information which, if disclosed, would have prevented or summarily defeated an objection to discharge. One could not be liable to a client for failing to disclose that which the client keeps the attorney from knowing. The contributory negligence instruction, however, could be understood as barring plaintiff's claim if plaintiff failed to tell Preman about *any* asset, even though the lack of disclosure of that asset might have had no effect on blocking a discharge. For instance, if Williams forgot to tell Mr. Preman about a saddle he owned, and if he were negligent in forgetting about the saddle, then, under the instruction as given, Williams could not recover against Preman, even if Preman were

negligent about many other items that Williams *did* tell him about. Thus, we conclude that it was error to include this submission in a contributory negligence instruction.

### Failure to Correct the Schedules

Logic again dictates that the allegation of Williams' failure to correct the schedules is not a proper submission for either contributory negligence or comparative fault. Mr. Preman was hired for the purpose, *inter alia*, of filling out the forms. He brought to the forms his professional knowledge and skill as to how such forms are to be completed. There was no testimony presented which would show that it was the duty of Dr. Williams to know what assets must be disclosed. No evidence was presented that the forms and schedules filed in connection with a bankruptcy petition were the kinds of forms and schedules with which Williams was familiar. Thus, we find no evidence to support the notion that Dr. Williams should have known that he had a duty to supervise Mr. Preman's completion of the forms. In *James Carr's Executrix v. Glover*, 70 Mo.App. 242 (1897), the question of whether the acquiescence of a client estops that client from pleading his attorney's negligence is examined. The court found that because the client was an attorney, the ordinary attorney-client relationship did not exist and the client was indeed estopped from asserting the attorney's negligence. *Id.* at 250. In so holding, the court emphasized the unique circumstances of the case and suggested that had the client not been an attorney there would exist no bar to the action, stating, "As a rule a client not only acquiesces in pleadings prepared and filed by his attorney, but he implicitly relies upon him in that regard." *Id.* The court in that case quoted the trial court as to the general rule:

A lawyer is not liable in damages to his client for a mere error in judgment on a legal proposition concerning which enlightened legal minds may fairly differ. But the same degree of diligence is required of a lawyer that is required of other men employed to render services of a technical

---

or scientific character; and if the error is such as to evince negligence he is liable. *Id.* at 247.

The normal assumption is that people hire lawyers to complete such forms because the clients are not familiar with how to do so. It would be the exception, and not the rule, where clients may be considered at fault for failing to properly supervise the very person they have hired as their expert. Such a notion, to be submissible, must be supported in the evidence. *See* Annotation, Contributory Negligence or Assumption of Risk as Defense in Action against Physician or Surgeon for Malpractice, 50 A.L.R.2d 1043. In this case, there was no evidentiary support for the proposition of Dr. Williams' duty to supervise Mr. Preman's work, even though Dr. Williams was required to sign the forms to evidence his good faith concerning the accuracy of the forms.[4] We hold the submission of this instruction was erroneous, and was prejudicial, because the submission suggesting that plaintiff had a duty to supervise the lawyer's completion of the forms was not supported by the evidence. *Berra v. Union Elec. Co.*, 803 S.W.2d 188, 190 (Mo.App.1991).

### Conclusion

The judgment is reversed and the case is remanded for a new trial on the claim of breach of fiduciary duty and legal malpractice. The amount of the settlement with Dr. Bradley was properly excluded from the calculation of damages by the trial court, but the trial court erred in denying plaintiff an opportunity to submit to the jury the claim for breach of fiduciary duty. The court also erred in submitting to the jury the contributory negligence instruction. On retrial, the settlement damages are to be excluded from damages as to each count. The case is remanded for further proceedings consistent with this opinion.

All concur.

---

4. There was a dispute between the parties about when Williams signed the schedules. Williams says he signed them before Preman completed them. Preman says Williams signed them after

they were completed. For purpose of our analysis, we assume they were signed *after* completion by Preman, because such an assumption is consistent with the jury verdict.