**FIRST BANK OF MINNESOTA, et al., Appellants,**

v.

**Kerry B. OLSON, et al., Respondents.**

No. C1–96–1642.

Court of Appeals of Minnesota.

Jan. 21, 1997.

Review Denied March 18, 1997.

---

Thomas A. Foster, Jennifer Kjos Fackler, Foster, Waldeck & Lind, Ltd., Minneapolis, for appellants.

Kay Nord Hunt, Terrance W. Moore, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and HUSPENI and SHORT, JJ.

## OPINION

SHORT, Judge.

In this legal malpractice action, the trial court awarded summary judgment for attorney Olson, finding First Bank of Minnesota and First National Bank of Glencoe (banks) would have won the underlying dispute in spite of Olson's alleged negligence, and, therefore, any negligence by Olson did not proximately cause the banks' damages in set-tling the dispute. On appeal, the banks argue the trial court misapplied the law.

## FACTS

The dispute underlying this malpractice claim involves residential real property in Edina, Minnesota. The million-dollar property was subject to six mortgages, of which First Bank of Minnesota and First National Bank of Glencoe each held one. After the primary mortgagor instituted a foreclosure proceeding and purchased the property, the property was subject to redemption by creditors filing notices of intent to redeem by September 10, 1992, six months after the date of sale. The banks acted together to purchase an assignment of the sheriff's certificate of sale and the second mortgage.

At 3:30 p.m. on September 10, 1992, the banks' attorney, Kerry B. Olson, telephoned the Hennepin County Recorder's Office and learned neither the banks nor any other creditors had filed notices of intent to redeem the property. Olson immediately telephoned the banks' common director and informed him that if no other creditor filed a notice by the end of the day, the banks' rights in the property would be unimpaired even if the bank did not file. No notices were filed, by the banks or others, as of 5 p.m. on September 10.

Earlier on September 10, a junior mortgagee had attempted to assign its mortgage to Collateral Recovery Corporation (CRC). CRC was unable to file a notice of intent to redeem before 5 p.m. that day. However, later the same evening, CRC obtained an ex-parte order from a Hennepin County District Court judge, directing the county recorder to accept CRC's late notice and date-stamp the notice as having been received on September 10. On September 11, CRC filed its notice of intent to redeem, together with the judge's order. The county recorder ignored the order and recorded September 11 as the filing date.

CRC attempted to redeem the property on September 16, 1992. Because Olson was leaving town, the banks retained the law firm of Oppenheimer, Wolff & Donnelly to file an action seeking declaratory relief against

CRC's purported interest in the property and to obtain a temporary restraining order preventing the sheriff from carrying out CRC's redemption. Before the trial court heard cross-motions for summary judgment, the parties reached a settlement, pursuant to which the banks paid CRC $83,000 for a release of any interest CRC had in the property. The banks eventually sold the property for an amount less than their total investment.

The banks filed this attorney malpractice action against Olson, alleging he was negligent by advising the banks it was not necessary for them to file notices of intent, and by failing to file such notices timely on their behalf. The banks claim damages, including the settlement amount in the CRC litigation, losses resulting from the delay in selling the property, and $25,000 in attorneys' fees paid to the Oppenheimer law firm.

In summary judgment proceedings, the trial court found Olson's alleged negligence did not damage the banks' position and was not a "but for" cause of the banks' settlement damages and granted summary judgment for Olson.

## ISSUE

Did the trial court err in granting Olson summary judgment against the banks' attorney malpractice claim?

## ANALYSIS

On appeal from a grant of summary judgment, this court determines whether the trial court erred in its application of the law and whether any genuine issues of material fact exist. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990); *see* Minn.R.Civ.P. 56.03 (setting forth trial court standard for summary judgment). To withstand summary judgment, the nonmoving party must present a genuine issue on each element essential to its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We do not defer to the trial court's analysis of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

To prevail on a legal malpractice claim, a plaintiff generally must show: (1) an attorney-client relationship existed; (2) the attorney acted negligently or in breach of contract; (3) such acts were the proximate cause of the plaintiff's damages; and (4) but for the attorney's conduct, the plaintiff would have been successful in the prosecution of his or her underlying claim. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn.1980). However, when an attorney's negligence harms a plaintiff by some means other than destruction of or damage to a cause of action, the fourth *Togstad* element is inapplicable. *Fiedler v. Adams,* 466 N.W.2d 39, 42 (Minn.App.1991) (noting *Togstad's* "case-within-a-case" element essentially describes proximate cause for legal malpractice that damages claim), *review denied* (Minn. Apr. 29, 1991); *see Gustafson v. Chestnut,* 515 N.W.2d 114, 116 (Minn.App.1994) (recognizing *Fiedler* simply applied traditional rule of "but for" causation to different fact situation); *see, e.g., Blue Water Corp. v. O'Toole,* 336 N.W.2d 279, 282 (Minn.1983) (omitting analysis of "case-within-a-case" element). In such cases, the courts have omitted the fourth element of the test or refashioned it to describe a test of proximate cause suited to the specific facts of the case. *See, e.g., Ross v. Briggs & Morgan,* 540 N.W.2d 843, 847 (Minn.1995) (inquiring, in place of fourth element, whether plaintiff would have been successful in asserting claim of coverage against insurer if plaintiff's attorney had tendered defense of claim); *Blue Water,* 336 N.W.2d at 282 (rephrasing fourth inquiry to determine whether bank charter application would have been granted if attorney had timely filed); *Fiedler,* 466 N.W.2d at 42 (employing three-part test and examining whether attorney's negligent financial advice proximately caused plaintiffs' losses); *TJD Dissolution v. Savoie Supply,* 460 N.W.2d 59, 62 (Minn. App.1990) (analyzing three elements of legal malpractice claim where attorney's alleged negligence affected no underlying action); *Veit v. Anderson,* 428 N.W.2d 429, 431–32 (Minn.App.1988) (same). Both proximate cause and the amount of damage sustained are fact issues for the jury. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 115 (Minn. 1992) (proximate cause); *Admiral Merchants*

*Motor Freight v. O'Connor & Hannan*, 494 N.W.2d 261, 267 (Minn.1992) (damages).

■ The banks do not claim Olson's failure to file notices of intent to redeem damaged an existing cause of action. Rather, they allege Olson's conduct directly caused them to lose their priority right to redeem the property, forcing them into litigation that would not have been necessary had Olson timely filed. Thus, to withstand summary judgment, the banks must offer evidence that Olson was negligent in failing to file or advise the banks to file, and that the negligence proximately caused the banks' settlement damages, attorney's fees, and losses arising from the delay in selling the property. The banks need not demonstrate as an element of their prima facie case that, but for Olson's conduct, they would have prevailed in the CRC litigation. Because Olson's negligence is not at issue on appeal, this case requires us to decide only whether the banks presented a genuine issue of the proximate cause element.

The sheriff's certificate and mortgage liens held by the bank were superior to the junior lien purchased by CRC. The banks argue that even if CRC's notice was valid, Olson's filing of a notice of intent on behalf of the banks would have allowed them to redeem the property themselves, taking it free and clear of any interest by CRC. The banks presented evidence to the trial court that, assuming this scenario, they would not have paid CRC $83,000 for a release of its interest, and their loss on the sale of the property would have been far less substantial than that actually suffered. Additionally, the banks argue they would not have incurred some or all of their extensive attorneys' fees in the CRC litigation but for Olson's failure to file a notice of intent to redeem. This evidence creates a genuine issue for trial on the element of proximate cause of the banks' damages. The extent of the loss, if any, directly resulting from Olson's alleged negligence, is a fact question for the jury.

■ The trial court granted summary judgment for Olson, finding that because the banks would have won the CRC litigation at trial, they need not have settled the dispute, and, therefore, the failure to file a notice of

intent did not cause the banks' settlement damages. *See Williams v. Preman*, 911 S.W.2d 288, 296–98 (Mo.Ct.App.1995) (refusing to award damages to malpractice plaintiff for settlement paid in underlying claim, holding that, absent proof plaintiff would have lost claim, voluntary settlement created speculation as to extent of damages caused). However, Minnesota law does not recognize as an additional element of a legal malpractice cause of action a requirement that the plaintiff prove that settlement in an underlying dispute was necessary because he or she would have lost at trial. *See, e.g., Ross*, 540 N.W.2d at 845–47 (addressing malpractice claim where underlying dispute was settled and not distinguishing between settlement figure and other damages in proximate cause analysis).

Under the rule espoused by the trial court, a legal malpractice plaintiff who was certain to lose an underlying dispute because of an attorney's negligence would be secure in concluding a settlement and thereby mitigating damages. However, the typical plaintiff, for whom the outcome of trial is uncertain, would face two poor choices; the plaintiff could either settle the underlying dispute and risk not recovering the settlement, or take the dispute to trial and risk a more substantial loss on a jury verdict. The malpractice plaintiff's safest route would be to go to trial, hoping to pass the damage award on to the negligent attorney in case of an adverse verdict. Thus, the rule would discourage settlement, contravening this state's public policy favoring the settlement of disputes short of litigation. *See Johnson v. St. Paul Ins.*, 305 N.W.2d 571, 573 (Minn.1981) (declaring public policy favoring settlement). Any motivation plaintiffs may have to settle underlying claims for an excessive figure is sufficiently tempered by the possibility they may not recover the settlement in a subsequent action for attorney malpractice. *See Williams*, 911 S.W.2d at 297 (fearing plaintiff may be tempted to settle underlying claim at any figure, believing responsibility for damage will be passed on to negligent attorney).

Moreover, the trial court's standard is not an accurate test of proximate cause. Under the proper test of causation, a jury could determine whether the banks' settlement damages were the natural and proximate re-

sult of Olson's conduct, even if the banks' legal position in the CRC litigation was strong. *See Schmanski v. Church of St. Casimir,* 243 Minn. 289, 293, 67 N.W.2d 644, 647 (1954) (quoting *Christianson v. Chicago, St. P., M. & O. Ry.,* 67 Minn. 94, 97, 69 N.W. 640, 641 (1896)) (stating negligent act is proximate cause of consequences that follow in unbroken sequence therefrom). Further, the banks would have incurred attorneys' fees in the CRC litigation and some loss due to the litigation-related delay in the sale of the property irrespective of whether the banks would ultimately have prevailed in the litigation. Therefore, we will not condition the banks' recovery of damages on proof they would have lost the CRC litigation in trial as a result of Olson's alleged negligence.

## DECISION

The banks need only satisfy the traditional test of proximate cause to recover their damages for the settlement of the CRC litigation and other losses; they need not prove they would have lost the litigation, had it gone to trial. Given the disputed fact issues regarding the existence and extent of damages arising from Olson's alleged negligence, the trial court erred in granting summary judgment. We reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**