James D. LUNDSTROM and John
Kanas, Respondents,

v.

David B. FLAVAN, Appellant.

No. 71798.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 24, 1998.

Daniel P. Card, II, Paule, Camazine & Blumenthal, P.C., St. Louis, for Appellant.

Joel D. Brett, Kevin L. Wibbenmeyer, Barklage, Barklage, Brett, Ohlms & Martin, P.C., St. Charles, for Respondents.

SIMON, Judge.

David B. Flavan, appellant, appeals from a judgment awarding $165,000.00 and $51,948.36 in prejudgment interest to James D. Lundstrom (Lundstrom) and John Kanas (Kanas), collectively respondents, on an oral contract.

On appeal, appellant contends that the trial court erred in: (1) rendering judgment for respondents on a purported oral contract between appellant and respondents, where both parties understood that performance could not be made in less than one year, and where such an agreement was required by Section 432.010 RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted) to be in writing; (2) enforcing the oral contract which was further barred by the statute of frauds, Section 432.010, because respondents were attempting to hold appellant liable for the debt of another; (3) finding clear, cogent and convincing evidence of the "requisite meeting of the minds" and "mutual assent" to establish the existence of an oral agreement between appellant and respondents and that any agreement was independent of respondents' efforts to market their water park; and (4) awarding prejudgment interest to respondents on the purported oral agreement pursuant to Section 408.020 from the date of the filing of the suit. We affirm.

Reviewing a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The record reveals that respondents were Denver residents, working together to develop a water park, "Surf's Up USA," (water park) in Saint Charles County, Missouri.

Respondents first met with appellant pursuant to this venture in 1985. Lundstrom testified that by 1990 to 1991, respondents had developed a close business and social relationship with appellant. In June or July of 1991, appellant learned that Lundstrom had moved to Las Vegas and in response commented on the possibility of gambling coming to Saint Charles. Appellant told Lundstrom that appellant had a river boat in Saint Charles and was planning to actively pursue operating the river boat. Lundstrom was unaware that the river boat was actually owned by a corporation, of which appellant was the sole shareholder. In July or August 1991, Lundstrom called appellant and offered that respondents would find a buyer for the river boat in exchange for a commission. Appellant agreed and offered ten percent. No talk of the water park was made during the conversation. Kanas was not present for the conversation but learned of the agreement from Lundstrom.

In the conversation regarding the sale, Lundstrom also asked appellant to send pictures, brochures and other information regarding the river boat. Appellant did as requested. Thereafter, respondents began contacting potential purchasers for the river boat, eventually entering into discussions with the eventual buyer Palace Station (Palace), now known as Station Casinos, Inc. on August 30, 1991.

From September 15 to September 17, 1991, respondents and Palace representatives (representatives) met with appellant in Saint Charles to negotiate a deal and view the river boat. At that time respondents also showed representatives the site for the proposed water park. Respondents learned early in the discussion that Palace was not interested in the water park but only in the river boat, which became the main focus of all later discussions between respondents and the representatives.

Representatives submitted a proposal for the purchase of the river boat on or about October 9, 1991. Kanas discussed the proposal with representatives but never furnished appellant with a copy. Later that month, representatives, Palace's attorney and respondents again went to Saint Charles so that representatives could present a revised proposal to appellant. Respondents never viewed the proposal.

At some point during the discussions with appellant, representatives, Palace's attorney, respondents and appellant went to appellant's attorney's office. Appellant, appellant's attorney, representatives, and Palace's attorney met in a conference room, while respondents waited in the waiting room. Thereafter, respondents had no further contact with Palace representatives.

On December 6, 1991, respondents prepared a written contract to evidence the terms of the oral agreement and sent it to appellant, but appellant did not sign the writing. Respondents had been in contact with appellant regarding the negotiations with Palace, but appellant did not inform respondents of the eventual sale. Respondents never learned of the sale until Lundstrom read about the deal in the Las Vegas papers. Thereafter, respondents filed suit.

At trial, Lundstrom testified that he asked appellant if appellant wanted respondents to pursue a purchaser for the river boat and appellant said that he did want them to find purchasers, offering a ten percent commission for the sale, to be paid on closing. Sale was to be contingent on the passage of proposed legislation approving river boat gambling in Missouri, scheduled for a vote in November, 1992. Appellant did not object to this testimony at trial. Kanas testified at trial that he learned of the agreement from Lundstrom, the parties considered an oral agreement sufficient because of respondents' relationship with appellant, and respondents trusted appellant.

Appellant denied at trial that there ever was any agreement and contended that any efforts put forth by respondents to bring about the sale of the river boat were in connection with respondents' motives to market the water park. Respondents testified that they initially did hope to market the

water park in addition to the sale of the boat, but early in the negotiations they realized that Palace was interested solely in the boat. Representatives' depositions, which were accepted into evidence, confirm that Palace's concern was with the sale of the boat, not a water park. In his deposition, Mr. Christenson, a representative, stated that Palace likely would not have even addressed the opportunity except for the gaming site.

Representatives also testified in their depositions that they had never met appellant before respondents introduced appellant and Palace's only contact with appellant, up to the October meeting with appellant's attorney, was through respondents. Representatives also indicated that respondents' role in the sale was critical. Representative deponents indicated that it was representatives' understanding that respondents would be receiving a commission from appellant, and it was their opinion that respondents deserved a commission for their efforts.

Additionally, representatives testified in their depositions that an asset purchase agreement for the purchase of the river boat had been made between appellant, acting for himself and for the corporation he controls, and Palace on January 13, 1993 and that payments were being made by Palace to appellant at the time of the depositions, August 19, 1994.

At trial, after the close of the respondents' case, appellant made an oral motion for a directed verdict, in which appellant for the first time argued that an oral agreement to answer for the debt of another is required to be in writing by the Statute of Frauds, Section 432.010. This defense was not pled in appellant's answer, nor did he move to amend his answer. The argument was renewed in appellant's motion for a new trial.

▇ In his first point, appellant contends that the trial court erred in rendering judgment for respondents on an oral contract to pay a sales or broker's commission for the sale of the river boat because under the terms of the contract performance could not

be had in less than one year. Here, the payment of the commission was contingent upon voter approval of the river boat gambling legislation, scheduled for a vote in November of 1992—more than one year after the making of the oral agreement. Section 432.010, the statute of frauds provides, in pertinent part:

> [N]o action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith ...

Rule 55.08 provides that affirmative defenses, including the statute of frauds, must be set forth in the pleadings. Our Supreme Court held that where a party fails to raise the statute of frauds defense in the pleadings or at trial by objecting to testimony regarding the oral contract, that party waives the defense. *Norden v. Friedman* 756 S.W.2d 158, 162 (Mo.banc 1988).

Here, appellant did not plead in his answer that the statute of frauds required a writing because the contract could not be performed within one year and did not object to the introduction of evidence at trial, or even raise this defense at any point during trial. Therefore, the defense that the contract need be in writing because it could not be performed within one year, was waived.

▇ Appellant alternatively requests that we review this under plain error review. Rule 84.13(c) provides that on appeal, a court may, in its discretion, consider plain error when the court finds that a manifest injustice or miscarriage of justice has resulted. The doctrine of plain error may not be used to cure a mere failure to make a proper and timely objection at trial. *Elfrink v. Burlington Northern R. Co.*, 845 S.W.2d 607, 613 (Mo.App.1992). Here, the only injustice presented to appellant was his own failure to plead the affirmative defense of the statute of frauds or object at trial to introduction of

the evidence. We will not allow appellant to evade responsibility for raising his defenses before the trial court.

In his second point, appellant contends that the trial court erred in enforcing the oral agreement because the agreement was required by the statute of frauds to be in writing as an agreement to pay the debt of another. Section 432.010 provides, in pertinent part, that "no action shall be brought ... to charge any person upon any special promise to answer for the debt, default or miscarriage of another person ... unless the agreement ... be in writing and signed by the party to be charged therewith." Appellant argues that a corporation actually owns the river boat, and respondents are seeking to hold appellant, as an individual, liable for a commission for the sale of the corporation's boat, thus respondents are charging appellant with the promise to pay a debt of another, the corporation. Therefore, appellant argues, the agreement must be in writing.

This defense, i.e. that the agreement needed to be in writing because appellant was answering for the debt of another, was not plead in the appellant's answer. At trial, when respondents introduced evidence of the purported agreement, appellant failed to object. Only after the respondents rested their case did appellant mention the statute of frauds, in an oral motion to dismiss (titled a motion for a directed verdict by appellant). The record does not indicate that appellant ever moved to amend his pleadings to include the defense. Where the statute of frauds defense is not included in a defendant's answer, nor asserted by objecting to the evidence at trial, the defense is waived. *See Norden,* 756 S.W.2d at 162.

In any event, even if the defense was not waived by failure to plead or make an objection at trial, appellant's claim lacks merit. Where a promise is an original undertaking between the promisor and the promisee, the promise creates a direct obligation of the promisor and is not within the statute of frauds. *Reinhardt v. Nikolaisen,* 775 S.W.2d 284, 285 (Mo.App.1989). A promise is an original undertaking where credit is given by the promisee to the promisor alone, the leading or main purpose of the promisor in making the promise is to gain advantage for himself or to promote some interest of his own, and the promise is supported by consideration beneficial to the promisor. *Autoquip Corp. v. Nicholson & Associates, Inc.,* 740 S.W.2d 664, 667 (Mo.App.1987).

Here, there is evidence to support that appellant created a direct obligation for himself. Appellant told respondents that appellant had a boat and wished to sell the boat, never mentioning that the boat was actually owned by a corporation. Respondents asked appellant if appellant wanted respondents to sell appellant's boat in exchange for a commission, and appellant promised to pay a ten percent commission. Later, when appellant actually signed the asset purchase agreement with the buyers, the agreement was between the buyer and "David Flavan acting for himself and an agent for corporations he controls." Moreover, in the signature portion of the agreement, the buyer signed as John J. Schreiber, President of St. Charles Riverfront Station, Inc., while the appellant simply signed as David Flavan, with no mention of a corporation which appellant represented. In the overruling of appellant's motion for a directed verdict, the trial court had sufficient evidence to conclude that appellant was acting on his own behalf to further his own interests in selling the boat, thus rejecting the claim that appellant was being held liable for the debt of another rather than a direct obligation of appellant's.

In his third point, appellant contends that the trial court erred in finding in favor of respondents that an oral agreement existed and that any such agreement was separate from respondents' efforts to market a water park. Appellant contends that respondents failed to establish by clear, cogent and convincing evidence that there had been the requisite "mutual assent" and "meeting of the minds" necessary to establish the existence of an oral contract.

Here, the record is not totally devoid of evidence to support the trial court's conclusion, nor is it against the weight of the evidence. There is ample evidence supporting the trial court's finding. Respondents testified as to the existence of an agreement and to its terms. Representatives testified that it was their understanding that appellant and respondent did have some kind of agreement for a commission to be paid. One of them even recalled that he received this impression from conversations with appellant. Respondents introduced evidence of the potential buyers they contacted, including the eventual buyer, and the materials respondents sent to the potential buyers. One of respondents' deponent witnesses, a Palace representative, testified that appellant had repeatedly made oral agreements with Palace and then tried to change the terms when the agreement was reduced to writing. Appellant simply denied making any agreement with respondents. The trial court, in finding for the respondents, found respondents' evidence more credible than the appellant. We will not disturb that finding. Consequently, appellant's third point is denied.

In his final point, appellant contends that the court erred in awarding respondents prejudgment interest from the date that respondents initially filed suit. Appellant contends that prejudgment interest may only be awarded for breach of contract on an oral agreement after the money becomes due and demand is made. Appellant argues that the money was not due until the judge found in favor of respondents, because the claim was not liquidated until the date of the judgment. Appellant also argues that even if the commission was due prior to the judgment, it was, by respondents' own evidence, not due until closing of the sale, and respondents failed to present evidence as to when closing occurred.

Section 408.020 provides that prejudgment interest shall be awarded on accounts not subject to a written contract after the money becomes due and demand is made. If a demand for payment was not made prior to the filing of a lawsuit, the filing of a lawsuit constitutes a demand for payment. *Transamerica Ins. Co. v. Pennsylvania Nat. Ins. Cos.*, 908 S.W.2d 173, 177 (Mo.App.1995). The remaining question is, when did the commission become due?

Appellant argues that the commission became due, if ever, only after the court determined that respondents were owed a commission by appellant, because not until the judgment did the claim become liquidated. The general rule is that prejudgment interest is not recoverable on an unliquidated demand. *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 6 (Mo.banc 1987). Appellant argues here that because there existed a dispute as to whether there was ever an agreement, the claim was unliquidated, and respondents should not be awarded prejudgment interest.

This case does not involve an unliquidated claim. The mere existence of a dispute relative to liability does not render a claim unliquidated. *Ohlendorf v. Feinstein,* 670 S.W.2d 930, 935 (Mo.App.1984). In a case where the amount of damages is fairly certain, even though liability is an issue, the court will award prejudgment interest. *Sharaga v. Auto Owners Mut. Ins. Co.,* 831 S.W.2d 248, 254 (Mo.App.1992). Here, while liability might have been in question, the amount of damages sought by respondents was not. Respondents prayed for ten percent of the purchase price of appellant's boat, an amount readily ascertainable. Therefore, we do not accept appellant's argument that the claim was unliquidated and thus did not become due until the date the trial court's judgment was entered.

Appellant also contends that even if the amount was due before entering judgment, it was, at the earliest, due at closing, and respondents failed to establish just when closing occurred. The unsigned writing that respondents introduced evidencing the terms of the purported oral agreement acknowledged that respondents would not be entitled to a commission, except upon closing of the sale. Thus, the amount could not have been due

until the sale was closed. Respondents did not provide evidence as to exactly when closing occurred, only that it had occurred by the time the case was filed. Appellant argues that respondents did not meet their burden in establishing when the commission became due and thus were not entitled to prejudgment interest from the date of the filing of the suit.

Respondents presented evidence that an asset purchase agreement was signed prior to the filing of the lawsuit. The Missouri voters had approved the river boat gambling legislation, one of the major contingencies of the sale. Lundstrom read about the deal between Palace and appellant in the Las Vegas newspapers prior to filing suit. These facts are sufficient to support the trial court's conclusion that the deal was closed at some time prior to the suit, and that the commission was due on or before the day the suit was filed. By filing the suit, the demand requirement was met and since the payment was already due at that time, the requirements for prejudgment interest were met. Thus, the award of prejudgment interest from the date of the filing of the lawsuit was not erroneous.

JUDGMENT AFFIRMED.

ROBERT G. DOWD, Jr., P.J., and HOFF, J., concur.