**David FLAVAN, Appellant,**

v.

**Ellsworth CUNDIFF, and Cundiff, Turken & Londoff, LLP, Respondents.**

**No. ED 79834.**

Missouri Court of Appeals, Eastern District, Division Two.

May 14, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2002.

Application for Transfer Denied Sept. 24, 2002.

Murry A. Marks, St. Louis, MO, for appellant.

R.C. Wuestling, St. Louis, MO, for respondents.

MARY R. RUSSELL, Judge.

David Flavan ("Client") appeals the trial court's grant of summary judgment in favor of Ellsworth Cundiff ("Attorney") and Cundiff, Turken, and Londoff, LLP ("Firm"). Attorney and Firm unsuccessfully defended Client in an action filed against him by James D. Lundstrom and John Kanas to recover sales commission for the sale of Client's riverboat. Client then brought a malpractice suit against Attorney and Firm, claiming Attorney was negligent in several respects in Client's defense. The trial court granted Attorney and Firm's motion for summary judgment, and Client now appeals.

Client asserts five points of error. First, he argues the trial court erred by deciding whether the statute of frauds defense was applicable in the underlying case because that was an issue for a jury to determine. In his second and third points, he claims the trial court incorrectly determined that the statute of frauds was not a viable defense in the underlying action because the sale of the boat was contingent upon the passage of specific legislation and because the purchaser did not meet the Client's specifications. Fourth, Client alleges Attorney and Firm did not meet their burden of proof in that their motion for summary judgment violated Rule 74.04(c). In his final point, Client claims the trial court granted summary judgment without addressing his arguments that Attorney and Firm failed to inform him of his right to a jury, to request a jury trial, and to request specific findings of fact and conclusions of law in the underlying case.

We address Client's first and fifth points on appeal, affirming the trial court's ruling as to his first point as a matter of first impression and dismissing his fifth point. With respect to Client's second, third, and fourth points on appeal, we affirm the trial court's judgment pursuant to Rule 84.16(b).

## Client Is Sued For Sales Commission In the Underlying Lawsuit

Over the last few decades, Lundstrom and Kanas occasionally combined efforts in

land development opportunities. One such development possibility was a water park in St. Charles County. Client owned a motel and restaurant in the area and was interested in the project. Lundstrom and Kanas first met with Client in 1985. Lundstrom and Kanas eventually purchased property in St. Charles County, and Client agreed to pursue an investor for their proposed water park. Meanwhile Lundstrom and Kanas developed a close relationship with Client over the next several years.

Lundstrom moved to Las Vegas in June or July of 1991, and Client, upon learning this, mentioned the possibility of gambling coming to St. Charles. Client told Lundstrom and Kanas that he owned a riverboat in St. Charles and hoped to operate it if gambling were legalized in Missouri. In July or August of 1991, Lundstrom called Client and suggested that he and Kanas find a purchaser for the riverboat in exchange for a commission. Client agreed and offered them 10 percent commission. The subject of the water park did not arise during this discussion. Kanas, who was not a party to the conversation, later learned of the agreement from Lundstrom.

When proposing that he and Kanas sell Client's boat, Lundstrom asked Client for pictures, brochures, and other information about the boat, and Client complied with the request. Lundstrom and Kanas thereafter began their campaign to sell Client's boat. They contacted Palace Station, later Station Casinos, Inc. ("Purchaser"), as a potential buyer, and entered into discussions with Purchaser on August 30, 1991.

Lundstrom and Kanas met with Purchaser's representatives for three days in mid-September 1991 to negotiate and tour the riverboat. In addition, Lundstrom and Kanas showed Purchaser's representatives the water park site, but they learned early in the discussion that Purchaser's only interest was in the riverboat and not the water park. Purchaser's representatives testified that as a result, ensuing discussions between Lundstrom and Kanas and Purchaser involved only the riverboat and not the water park.

Purchaser's representatives presented a proposal to purchase Client's boat on October 9, 1991. Client never saw the proposal. Kanas discussed it with Purchaser's representatives. Later that month, Purchaser's representatives and its attorney met with Lundstrom and Kanas in St. Charles so Purchaser's representatives could present another proposal to Client, but Lundstrom and Kanas never saw the proposal.

At some point in the negotiation process, Purchaser's representatives and its attorney, Lundstrom and Kanas, and Client met in Client's attorney's office. Client and his attorney and Purchaser's representative and its attorney conversed in a conference room while Lundstrom and Kanas were not present. Following this meeting, Lundstrom and Kanas did not have any communication with Purchaser.

Lundstrom and Kanas prepared and sent Client a written contract on December 6, 1991, regarding their commission agreement. Client did not sign the writing. In addition, even though he was in communication with Lundstrom and Kanas regarding the sale negotiations with Purchaser, he did not inform them of the eventual sale of his boat to Purchaser. Lundstrom and Kanas learned of the sale through the Las Vegas newspapers.

Lundstrom's trial testimony indicated that he asked Client whether he wanted Lundstrom and Kanas to find a purchaser for the riverboat, and Client answered affirmatively and offered a 10 percent commission to be paid on closing. He said that the sale was contingent on the pas-

sage of the proposed riverboat gambling legislation to be voted on in November 1992.

In his testimony at trial, Client denied any agreement between himself and Lundstrom and Kanas and attributed their efforts to sell his boat as collateral to their efforts to develop their own water park. Lundstrom and Kanas admitted that they initially hoped to promote the water park in conjunction with selling Client's riverboat, but they abandoned the water park effort with respect to Purchaser once they realized Purchaser was only interested in the boat. In his deposition, a Purchaser representative testified that without the gaming site, Purchaser's representatives otherwise would not have addressed the water park opportunity.

Purchaser's representatives further testified in depositions that they first met Client when Lundstrom and Kanas introduced them and, until the October meeting with Client's attorney, their only contact with Client was through Lundstrom and Kanas. They testified that Lundstrom and Kanas' role in their acquisition of Client's riverboat was critical, and they believed Lundstrom and Kanas' efforts were deserving of a commission for selling the boat. Purchaser's representatives testified that on January 13, 1993, the asset purchase agreement for the riverboat's purchase was entered between Purchaser and the corporation that Client, as its only shareholder, controlled.

Lundstrom and Kanas subsequently brought suit against Client to recover their commission per their oral contract with him. Following the presentation of Lundstrom and Kanas' evidence, Attorney made an oral motion for directed verdict wherein he argued that an oral agreement to answer for someone else's debt violates sec-

tion 432.010 RSMo 2000,[1] commonly known as the statute of frauds. Attorney had not argued the statute of frauds defense previously, either in his answer or earlier in the trial, and he did not seek to amend his answer.

The case was tried in the Circuit Court of St. Charles County, and judgment was rendered in favor of Lundstrom and Kanas. The trial court awarded them $165,000 plus $51,948.36 in prejudgment interest. Attorney attempted to renew his statute of frauds defense again in his motion for a new trial. Client unsuccessfully appealed the trial court's judgment to this Court, alleging four errors on appeal. *See Lundstrom v. Flavan*, 965 S.W.2d 861 (Mo.App.1998). Attorney and Firm did not represent Client in the appeal. *See id.* at 862.

### Client Appeals the Underlying Lawsuit

Client's first two points on appeal attempted to raise a statute of frauds argument. *Id.* at 864–65. He first claimed that the trial court erroneously found in Lundstrom and Kanas' favor on an oral contract to pay them commission for selling his riverboat because the contract, under its terms, could not have been performed in less than one year. *Id.* at 864. This Court rejected his argument because Rule 55.08 provides that unless an affirmative defense like the statute of frauds is raised in the pleadings or at trial by an objection to the testimony regarding the oral contract, it is waived. *Lundstrom*, 965 S.W.2d at 864. Attorney did not include the defense in his answer, he did not object at trial to the evidence regarding the contract, and he did not raise the defense during the trial. *Id.* Attorney therefore failed to preserve the statute of frauds defense and could not argue it before the appellate court. *Id.*

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

A similar conclusion was reached for Client's second point, which was that the trial court should not have enforced the oral agreement because it was an agreement to pay the debt of another and, as such, was required by the statute of frauds to be in writing. *Id.* at 865. This Court again noted that this defense was waived per Rule 55.08 but indicated nonetheless that it lacked merit because the transaction resulted in a direct obligation for Client and not one for the debt of another. *Lundstrom,* 965 S.W.2d at 865.

In his third point, Client claimed that the trial court erred in finding that an oral agreement existed and that such agreement was separate from Lundstrom and Kanas' efforts to develop a water park. *Id.* Upon a review of the record, this Court found sufficient evidence to support the trial court's findings that an agreement existed. *Id.* at 866.

Client's final point contested the trial court's award of prejudgment interest to Lundstrom and Kanas pursuant to section 408.020. *Lundstrom,* 965 S.W.2d at 866. This Court found that the prejudgment interest award was not erroneous and affirmed the trial court's award. *Id.* at 867.

### Client Files a Malpractice Action

Client subsequently filed a malpractice action on August 27, 1999, against Attorney and Firm for their representation of him in Lundstrom and Kanas' action to recover commission from him for the sale of his riverboat. Client claimed that Attorney committed malpractice in the underlying lawsuit by failing to raise the statute of frauds defense sooner, failing to object to evidence of the oral agreement, failing to request findings of fact and conclusions of law, and failing to demand a jury trial. Attorney and Firm filed a motion for summary judgment, and a special judge was appointed and heard oral arguments on the motion.

▇▇▇ Attorney and Firm argued that summary judgment was proper because Client could not prove the necessary elements of his malpractice claim. In order to prevail in a malpractice action, a client must prove: (1) that an attorney-client relationship existed; (2) that the attorney acted negligently or in breach of contract; (3) that such acts were the proximate cause of the client's damages; and (4) that but for attorney's conduct the client would have been successful in prosecution of the underlying claim. *Donahue v. Shughart, Thomson & Kilroy, P.C.,* 900 S.W.2d 624, 626 (Mo. banc 1995). Attorney and Firm argued in their motion for summary judgment that they had negated the third and fourth elements, and they were therefore entitled to judgment as a matter of law.

Attorney and Firm argued that the trial judge in the malpractice action, and not the jury, should determine the applicability of the statute of frauds defense. They began this argument by noting that, in general, applicability of the statute of frauds is an issue of law to be determined by a judge. They extrapolated that premise by saying that because the applicability of the statute of frauds was a question of law for a trial judge in an underlying action, it would follow that it was a question of law in a malpractice action to be addressed by the trial judge and not the jury.

They claimed the statute of frauds did not constitute a viable defense such that Client was not prejudiced by a failure to raise it sooner in the underlying lawsuit. They contended the agreement fell within two exceptions to the statute of frauds. First, they argued that the oral agreement could have been performed in one year, thereby removing it from the statute of frauds. Second, they declared that full

performance by Lundstrom and Kanas rendered the statute of frauds defense inapplicable. Without a viable affirmative defense as claimed by Client, Attorney and Firm reasoned that Client could not prove that their actions proximately caused Client's damages or that his defense otherwise would have been successful in the underlying case.

The trial court found no material dispute of facts existed regarding the issues necessary to resolve the case and granted the motion for summary judgment on June 29, 2001. In his deposition for the malpractice action, Attorney testified that he did not object to Lundstrom and Kanas' testimony at trial regarding the oral agreement because he thought the statute of frauds would not have been a successful defense. The judge agreed with Attorney and Firm's assertion that the statute of frauds would not have been a viable defense in the underlying action even if it had been raised sooner. He found the defense inapplicable for three reasons.

First, the trial court noted that the statute of frauds does not provide a defense if the contract can be performed within one year of the making. The judge concluded that Lundstrom and Kanas' offer to Client to locate a purchaser for Client's riverboat in exchange for 10 percent commission was not a contract until the sale was consummated between Client and Purchaser. The judge found that the contract was fully performable within one year following the sale of the riverboat and, therefore, was impervious to a statute of frauds defense.

Second, the judge found that the contract was an oral agreement that was possible to have been performed within one year of its making, and, as a result, the statute of frauds was inapplicable. Where the statute of frauds is concerned, the trial court stated, the possibility that the agree-ment could be performed within one year is sufficient to remove the contract from the statute of frauds.

Finally, the trial court determined that the full performance exception to the statute of frauds would have precluded it from providing Client with a successful defense. The trial court found the agreement between Lundstrom and Kanas and Client was a unilateral contract. Because Lundstrom and Kanas rendered full performance of the contract by finding a buyer for the riverboat, the trial court reasoned, the statute of frauds would not have provided Client with a defense for failing to pay their commission.

The trial court concluded that the success of Client's malpractice action hinged on the viability of the statute of frauds defense in the underlying action had it been argued sooner. Because he found the statute of frauds defense inapplicable for three reasons, the trial court granted Attorney and Firm's motion for summary judgment.

### Client Appeals the Malpractice Action

The standard of review for summary judgment is *de novo,* and the criteria for testing the propriety of summary judgment on appeal are identical to those used by the trial court in its decision to sustain the motion originally. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the non-movant, who is given the benefit of all reasonable inferences. *Novich v. Husch & Eppenberger,* 24 S.W.3d 734, 735 (Mo.App.2000).

In order to establish a right to summary judgment, a defendant may show any of the following: (1) facts that negate any element of the claimant's cause of action; (2) after adequate time for discovery, the

non-movant has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of claimant's elements; or (3) there is no genuine dispute as to the existence of all the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* If the movant's *prima facie* showing demonstrates that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, then the non-movant must establish that a genuine issue exists by supplementing the record with competent material. *ITT*, 854 S.W.2d at 381. Rule 74.04(c)(3) states that summary judgment "shall be entered forthwith if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The trial court awarded summary judgment on the basis that Attorney and Firm presented facts negating the third element of Client's malpractice action, which was whether their acts or omissions proximately caused Client's damages.

We initially address Client's first point on appeal that the trial court erred in its grant of summary judgment by deciding whether the statute of frauds defense was applicable in the underlying case because that was an issue for a jury to determine. This question previously has been unanswered in Missouri jurisprudence.

Historically, the line between issues of law versus questions of fact has posed problems in legal malpractice cases. *Gabbert v. Evans*, 184 Mo.App. 283, 166 S.W. 635 (1914), required the court to determine the sufficiency of an affidavit for appeal and whether it was negligently prepared by the client's attorneys. *Id.* at 638. In passing on the issue of their negligence and finding for the defendants in *Gabbert*, the court painted with a broader brush

than Attorney and Firm requested in their motion for summary judgment. The *Gabbert* court declared, "In actions of this character against attorneys, the rule is well settled that when the facts are ascertained, the question of negligence or want of skill is a question of law for the court." *Id.* (*quoting Gambert v. Hart*, 44 Cal. 542, 552 (1872)). In contrast, Attorney and Firm seek merely a determination that issues of law in an underlying suit remain issues of law for ensuing legal malpractice rulings.

In *Calhoun v. Lang,* 694 S.W.2d 740 (Mo.App.1985), this Court discussed the general issue raised by Attorney and Firm, but found a conclusion unnecessary. *Id.* at 742. Like the instant case, *Calhoun* involved an appeal of summary judgment granted in a legal malpractice case. *Id.* The defendant attorneys "contended that the 'recreation' of the underlying lawsuit mandate[d] that the determination of the meritoriousness of plaintiff's original suit be made before the same type of factfinder as would have been utilized in the original suit—a judge rather than a jury." *Id.* Although this Court "entertain[ed] serious doubts" about the attorneys' contention, we declined to address the issue. *Id.*

*Williams v. Preman* provides guidance as to the scope of a fact-finder's task in a legal malpractice case and brings us one step closer to resolving the issue in the present matter. 911 S.W.2d 288 (Mo.App. 1995), *rev'd on other grounds* by *Klemme v. Best,* 941 S.W.2d 493 (Mo. banc 1997). In *Williams,* the underlying case was a bankruptcy action and the client was required to prove in his malpractice case that he would have prevailed over an objection to discharge if the bankruptcy had been tried instead of settled. *Id.* at 294. The trial court ruled against the client in the malpractice action, finding that any damages from settling the bankruptcy case

did not stem from any of the defendants' acts or omissions. *Id.* The client appealed the trial court's finding, claiming he was denied a jury trial in his claim against his attorneys for breach of fiduciary duty during their representation in his bankruptcy action. *Id.*

In reversing the trial court's decision to withhold the issue from the jury, the appellate court cited *Justice v. Carter*, 972 F.2d 951 (8th Cir.1992), wherein the 8th Circuit found that a jury could determine the merit of an underlying bankruptcy action, even though a judge, and not a jury, decides issues of fact and law in a bankruptcy action. *Williams*, 911 S.W.2d at 295. In *Justice*, the 8th Circuit stated, "the jury in the malpractice case is permitted to decide this by substituting its judgment for the judgment of the factfinder, be it jury or judge, in the earlier case." *Williams*, 911 S.W.2d at 295 (*quoting Justice*, 972 F.2d at 957). The *Williams* court therefore granted the plaintiff's claim of error, noting that proximate cause generally is an issue of fact for a jury, even where the factfinder inevitably would have been a judge in the underlying case. *Id.*

*Williams* stands for the proposition that the jury's role as factfinder remains intact in a malpractice case without regard to who would have been or who was the factfinder in the underlying case. *Williams*, however, does not mention whether the dichotomy is preserved with respect to the judge's role in determining issues of law, which is the question we must answer in the instant case. Finding no Missouri case instructive on the issue, we look to other sources.

We begin with Richard E. Mallen and Jeffrey Smith's Legal Malpractice treatise in which they declare that a judge in a malpractice case maintains the task of determining issues of law. In their introduction to the topic, they state:

The trial judge should decide what issues are of law to be decided only by the court and what are of fact to be decided only by the trier of fact. Although the task requires careful analysis, the resolution is determined by how the issues should have been decided in the underlying case or matter. Issues of law do not become issues for the jury in a legal malpractice action.... It is error to withhold issues of fact from a jury.... No matter the factual issue, the usual rule is that, if the evidence is undisputed or so conclusive that reasonable persons would not disagree, the resolution presents a question of law for the court.... The trial judge must decide what issues are of fact and what are of law and submit the factual issues to the jury under proper instructions.

RICHARD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE 86–87 (5th ed. 2000). One of the cases cited by Mallen and Smith is *Chocktoot v. Smith*, a seminal Supreme Court of Oregon case.

In *Chocktoot*, a personal representative sued the attorneys who had previously represented his decedent in a proceeding to determine whether the decedent was an heir of a man who died intestate. 280 Or. 567, 571 P.2d 1255, 1256 (1977). The trial court found that the defendant attorneys were negligent and that, because the underlying case was tried to a judge, it had the responsibility to determine whether the attorneys' negligence altered the outcome of the heirship action. *Id.* at 1256–57. It concluded that their negligence was the proximate cause of the decedent's prior unsuccessful action and directed a verdict accordingly. *Id.* at 1257.

The attorneys appealed, alleging that the trial court committed error by ruling on the issue of causation in lieu of letting the jury decide. *Id.* As in *Williams*, the court noted that a jury in a malpractice

case is permitted to substitute its judgment for that of the factfinder in the underlying case, "even when the earlier factfinder was a judge, an administrative hearings officer, an arbitrator, a court-martial, or any tribunal ..." *Chocktoot,* 571 P.2d at 1258; *cf. Williams,* 911 S.W.2d at 295.

In addition, *Chocktoot* delineated the roles of judge and jury with respect to issues of law. It declared: "[N]o jury can reach its own judgment on the proper outcome of an earlier case that hinged on an issue of law.... [T]he jury cannot decide a disputed issue of law on the testimony of lawyers." *Chocktoot,* 571 P.2d at 1258. The court determined that the trial court's decision that the heirship action would have succeeded but for decedent's attorneys' negligence was an issue of fact, "unless the court thought that it was beyond reasonable dispute to the point of justifying a directed verdict on the issue of causation as well as negligence." *Id.* at 1259. The cause was therefore remanded for a new trial. *Id.* at 1259–60.

On the basis of the authority presented, we find it was not error for the trial court to determine the applicability of the statute of frauds, inarguably an issue of law to be determined by a judge, because we agree with its conclusion that Client's response to Attorney and Firm's motion for summary judgment presented no genuine issues of material fact.[2]

We note that the rule established herein does not invade the province of the jury, and that the logic supporting it is "overwhelmingly embraced by our sister jurisdictions." *Charles Reinhart Co. v. Winiemko,* 444 Mich. 579, 513 N.W.2d 773, 779–80, 783–84 & nn. 39–41 (1994); *see Envtl. Control Sys., Inc. v. J. Thomas Long,* 301 Ill.App.3d 612, 234 Ill.Dec. 901, 703 N.E.2d 1001, 1008 (1998). Under this approach, the jury retains its conventional role of "determining what happened, when it happened, and how it happened." *Envtl. Control Sys., Inc.,* 234 Ill.Dec. 901, 703 N.E.2d at 1008.

However, we note that "this reasoning is not based upon a jury's ability to decide complicated issues." *Id.* Instead, the decision to retain the bifurcation of issues of law versus those of fact in a malpractice action stems from article V, section 1 of the Missouri Constitution, which vests courts with this power. *Cf. Chocktoot,* 571 P.2d at 1257 (*citing* OR. CONST. art. VII, section 3); *Envtl. Control Sys., Inc.,* 234 Ill.Dec. 901, 703 N.E.2d at 1008 (*citing* ILL. CONST. art. VI, section 1).

■ Appellate considerations also compel our conclusion. As Attorney and Firm noted at oral argument in the instant case, allowing the jury to determine issues of law could wreak havoc upon established standards of review. Review of a jury verdict is curtailed dramatically compared to review of issues of law, which is *de novo. Envtl. Control Sys., Inc.,* 234 Ill.Dec. 901, 703 N.E.2d at 1008; *Charles Reinhart Co. v. Winiemko,* 444 Mich. 579, 513 N.W.2d 773, 779–80 (1994). Indeed, if we allowed

---

**2.** We note that Flavan concedes the existence of the agreement and its contingencies in his statement of facts in his appellate brief: "L[undstrom] and K[anas]'s right to a commission for the sale of Flavan's boat was contingent.... Specifically, their entitlement to a commission was restricted by the stated terms of the 'Agreement' enclosed with Kanas's letter: 'Sale is contingent on passage of Missouri State gambling legislation and li-

cense award.' L[undstrom] and K[anas] also understood that the 10 percent commission was due only upon closing of the sale of Flavan's river boat." For our review, the parties do not dispute the existence of the agreement or its terms; rather, their disagreement arises from differing views of the appropriate legal result based on these undisputed facts.

juries to decide issues of law, "errant juries may find a defendant liable on the basis of an incorrect interpretation of the law, and that finding may become immune from effective judicial review." *Winiemko,* 513 N.W.2d at 779.

■ In sum, we agree with the trial court's finding that no genuine issue of material fact existed in Client's malpractice case. In addition, because the applicability of the statute of frauds is an issue of law, we find it was proper for the trial court in the malpractice action to determine its viability as a defense in the underlying suit. We concur with the trial court's conclusion that even if the statute of frauds defense had been asserted in Lundstrom and Kanas' action to recover the commission from Client, it would have failed. Any omission on Attorney's or Firm's part in failing to raise or argue an inapplicable defense could not have proximately caused any damage to Client. *See Roehl v. Ralph,* 84 S.W.2d 405, 412 (Mo. App.1935).

■ Client's first point is denied, and the trial court's judgment as to his second, third, and fourth points is affirmed pursuant to Rule 84.16(b). We next address Client's remaining claim of error, wherein he asserts the trial court granted summary judgment without addressing his arguments that Attorney and Firm failed to inform him of his right to a jury, to request a jury trial, and to request specific findings of fact and conclusions of law in the underlying case.

We agree that these arguments were not addressed in the trial court's summary judgment order. However, we find that the entry of summary judgment was proper and that Client failed to cite any authority to support his argument that a failure to address all the arguments in a motion for opposition to summary judgment constitutes grounds for reversal. Moreover,

Client fails to demonstrate that these alleged omissions on Attorney's and Firm's part would have precipitated a different result in the underlying action.

■ When reviewing a grant of summary judgment, we are required to sustain the trial court's order if the judgment is sustainable under any theory. *Rodgers v. Czamanske,* 862 S.W.2d 453, 458 (Mo.App. 1993). We have found that Attorney and Firm's motion for summary judgment was properly granted by the trial court because Client could not prove that the statute of frauds defense was viable, therefore, he could not demonstrate that their actions proximately caused his damages or that, but for their omission, he would have avoided liability to Lundstrom and Kanas.

Although Client includes a several-page argument on this point, we note that the majority of his statements and all the authority he cites concern the requirements for formation of an oral contract. It is unclear how his discussion correlates to the error alleged in this point. In addition, Client fails to demonstrate how these alleged errors would have affected the outcome of the underlying suit. Instead, his unsupported argument purports to demonstrate how specific findings of fact and conclusions of law by the trial court would have allowed him more readily to present arguments on appeal, and he claims Lundstrom and Kanas' case was easier to prove to a trial judge than to a jury.

■ Rule 84.04(d)(5) requires appellants to include with each point relied on "a list of cases, . . . and the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies." When a point is not a matter of first impression and precedent is available, with limited exceptions, the appellant must cite to authority if it wishes to prevail. *Thummel v. King,* 570

S.W.2d 679, 687 (Mo. banc 1978). If an appellant neither cites to authority nor explains its failure to do so, then the appellant is deemed to have abandoned that point. *Hutchings v. Waxenberg,* 969 S.W.2d 327, 330 (Mo.App.1998). Otherwise, we are left "with the dilemma of deciding that case ... on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency." *Thummel,* 570 S.W.2d at 686. Appellate courts should not serve as an advocate for any party on appeal, and unfairness would inevitably result if the rule were otherwise. *Id.* As a result of Client's failure to provide us with any law instructive on his argument, we dismiss Client's fifth point.

The judgment of the trial court is affirmed.

GEORGE W. DRAPER III, P.J., and MARY K. HOFF, J., concur.