# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00390-CR

**Horace Lee Caruthers, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368THJUDICIAL DISTRICT
### NO. 01-074-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

Appellant Horace Lee Caruthers appeals his conviction for possession of a controlled substance, namely cocaine, with the intent to deliver in an amount of four grams or more but less than two hundred grams. The jury found appellant guilty and assessed his punishment at thirty-one years= imprisonment and a fine of $10,000. The jury found a deadly weapon was not used or exhibited during the commission of the offense as alleged, and further acquitted appellant of the offense of possession of a firearm by a felon as alleged.

### Point of Error

Appellant advances a single point of error. He contends that the trial court erred in overruling his pretrial motion to suppress evidence. We will affirm the judgment of conviction.

## Background

Appellant filed a pretrial motion to suppress Aany tangible evidence seized in connection with the case@ arising out of his warrantless arrest and in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections nine, ten, and nineteen of the Texas Constitution.

The trial court conducted a pretrial hearing on the motion to suppress. *See* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 1989). It was acknowledged that the arrest and search were warrantless, so the State accepted the burden of going forward with the evidence. Detectives Rudy Vicente Gonzalez and David Garrett of the Taylor Police Department testified that on the night of March 3, 2001, they were on duty together with Corporal Dan Ramsey of the same department. They encountered a confidential informant who told them that Harold Caruthers was at 516B. Lenora Street, about five blocks away, in a brown rag or cloth topped automobile with a large hood ornament. The informant stated that he had personally seen a large amount of crack cocaine at the location. As Detective Garrett recalled it, the confidential informant told the officers Caruthers had possession of the bag of crack cocaine and was selling it from the location given. The confidential informant had furnished reliable and trustworthy information to Detective Gonzalez in at least three previous narcotic cases. Detective Garrett knew appellant and his car as he had handled appellant on a felony case, and he knew appellant had been recently released from the resulting felony conviction. The officers knew that the address given was in a residential district that was Aa high narcotics trafficking area.@ Garrett had been previously assaulted when making an arrest in the Lenora

2

Street area. He had been present on another occasion when officers were outnumbered and surrounded by a crowd in the area while awaiting the issuance of a search warrant.

In a marked police vehicle, the three officers drove to 516B. Lenora Street. They drove past the address, observed the car as described by the informant, turned around, drove back, and parked. The brown car was in the driveway but headed towards the street. As the officers exited the police vehicle, a man later identified as appellant got out of the driver=s side of the brown Pontiac car, looked at the police officers, and walked away at a fast paceCalmost a run. Detective Garrett, who knew appellant, called to him and told him to return to the car. Appellant complied. Detective Gonzalez then frisked appellant for weapons for the officers= safety. In the patdown, Gonzalez found no weapons or narcotics. The time was approximately 11:23 p.m. Gonzalez described the scene as dark. For safety purposes, he shined a flashlight into the front windshield of appellant=s car to determine if any one was in there. He found no one in the car but observed a handgun on the floor board protruding from under the driver=s seat. Detective Gonzalez announced his observation, and Detective Garrett responded that appellant had been convicted as a felon and it was still within the five-year period in which felons are prohibited from possessing firearms.[1]

---

[1] Section 46.04 of the Texas Penal Code provides in pertinent part:

(a) A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) After conviction and before the fifth anniversary of the person=s release from confinement following conviction of the felony or the person=s release from supervision under community supervision, parole, or mandatory supervision, which ever date is later . . . .

Tex. Pen. Code Ann. ' 46.06(a)(1) (West Supp. 2002). The current version is cited for

The officers checked immediately by police radio and determined that appellant had indeed been convicted of a felony and the fifth anniversary of his release from that conviction had not been reached. The officers then made a warrantless arrest of appellant on the basis of a felon in possession of a firearm committed in their presence. The brown car was opened. Detective Gonzalez revealed that the other officers found in the front compartment area of the car the loaded handgun, and $220 in cash. In the unlocked glove compartment Detective Garrett discovered a bag containing a substance later shown to be 19.3 grams of crack cocaine. Gonzalez took custody of all the items found in the front compartment of appellant=s car. Appellant was also arrested for possession of a controlled substance.

Appellant=s two sisters testified at the suppression hearing. Lucinda Caruthers stated that she lived at 516A. Lenora at the time in question; that she arrived home from work at 10:45 p.m.; that Jeffrey Kokomo, Randall Bradburg, and an eighteen- or nineteen-year-old female were in the car with her brother but they fled when the police officers arrived; that the officers pulled appellant from his car; that she did not see the officers use flashlights; and that no one could see through the windshield of her brother=s car. Michelle Caruthers testified that she lived at 516B. Lenora Street with her children; that appellant stayed there Asometimes@; that she got home from work and left about 10:30 p.m. to visit a friend on Lenora Street; that she received a telephone call and returned home to find appellant in a patrol vehicle, and the officers using flashlights in appellant=s car; and that the officers searched her home, stating they were looking

convenience.

for individuals who had fled from the car. At the conclusion of the suppression hearing, the trial court denied appellant=s motion to suppress the evidence seized.

At the trial on the merits, the parties consensually relitigated the suppression issue. *See Rachel v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).[2] Appellant had an article 38.23 charge submitted in the trial court=s instructions. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2002). By their verdict, the jury rejected appellant=s contention.

**Standard of Review**

A pretrial motion to suppress evidence is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.CSan Antonio 1990, no pet.). The standard of review of a trial court=s ruling on a motion to suppress evidence is an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1991); *Guevara v. State*, 6 S.W.3d 759, 762 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d). At the suppression hearing, the trial court is the sole trier of fact, and the judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Villarreal*, 935 S.W.2d at 138. The trial court is free to accept or

---

[2] As an exception to the general rule, when the parties consensually relitigate the suppression issue at trial, the trial evidence as well as the evidence at the suppression hearing may be considered in determining error in the ruling on the motion to suppress evidence. *See Rachel v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

reject the testimony of any witness. *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990); *see also Allridge v. State*, 850 S.W.2d 477, 492 (Tex. Crim. App. 1991). In the absence of findings of fact, we presume that the trial court impliedly found facts necessary to support its ruling. *State v. Johnson*, 896 S.W.2d 277, 280 (Tex. App.CHouston [1st Dist.] 1995), *aff=d*, 939 S.W.2d 586 (Tex. Crim. App. 1996); *State v. Davis*, 991 S.W.2d 882, 883 (Tex. App.CHouston [1st Dist.] 1999, no pet.). Generally, on appeal, we review the record and all reasonable inferences therefrom in the light most favorable to the trial court=s ruling. We sustain that ruling if it is correct on any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138.

That being said, we must keep in mind that while appellate courts should afford almost total deference to a trial court=s determination of historical facts supported by the record, the appellate court reviews *de novo* the application of the law to the facts. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Appellate courts may review *de novo* Amixed questions of law and facts@ that do not require evaluation of credibility and demeanor of the witnesses. *Id.* Normally, when testing the legality of Astops and frisks@ and searches, we review *de novo* the trial court=s determination of reasonable suspicions and probable cause as a mixed question of law and fact. *Id.*

### *Reasonable Suspicion*

The United States Supreme Court has held that an officer without probable cause to believe that an individual has engaged in criminal conduct is nevertheless sometimes permitted by the Fourth Amendment to detain the individual for certain investigative purposes. *Adams v. Williams*, 407 U.S. 143, 146-47 (1972); *Terry v. Ohio*, 392 U.S. 1, 21 (1968). These detentions are frequently referred to as

**6**

ATerry stops@ or a Astop and frisk@ when conducted by law enforcement personnel. *Carmouche v. State*,

10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Court stated:

> In *Terry*, we held that an officer may, consistent with the Fourth Amendment, conduct a
> brief investigative stop when the officer has reasonable, articulable suspicion that criminal
> activity is afoot. 392 U.S. at 30. While Areasonable suspicion@ is a less demanding
> standard than probable cause and requires a showing considerably less than preponderance
> of evidence, the Fourth Amendment requires at least a minimal level of objective
> justification for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The
> officer must be able to articulate more than an Ainchoate and unparticularized suspicion or
> >hunch=@ of criminal activity. *Terry*, *supra*, at 27.

*Wardlow*, 528 U.S. at 123-24.

Reasonable suspicion, like probable cause, cannot be reduced to Aa neat set of legal rules.@

*United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). Reasonable suspicion must be determined by looking

at the totality of the circumstancesCthe whole picture. *Id*.; *see also Alabama v. White*, 496 U.S. 325,

328-29 (1990); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Carmouche*, 103 S.W.3d at 328;

*Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

In order to constitute reasonable suspicion, the information need not be within the first-hand

knowledge of the officer. *Williams*, 407 U.S. at 147. A tip from a known informant may be sufficient. In

the instant case, the tip came from a reliable confidential informant who had given Detective Gonzales

information in the past about narcotic cases which had proven to be correct and trustworthy. The informant

identified appellant by name, described appellant=s car, gave appellant=s location as five blocks away, and

reported that he (informant) had personally seen appellant in possession of cocaine which appellant was

selling from the described car. Detective Garrett knew appellant, knew appellant=s car, and knew appellant was a convicted felon. In addition, the officers knew that the location in question was a heavy narcotic trafficking area and they would be venturing into that area at night. Detective Garrett had previously been assaulted in the area while making an arrest.

Upon arriving at 516B. Lenora, the officers saw appellant exit the brown automobile described, look at the officers and move away from them at a fast pace. In *Wardlow*, 528 U.S. at 124-25, the United States Supreme Court agreed that unprovoked flight upon noticing police is not necessarily indicative of wrongdoing, but certainly suggestive of such when coupled with the relevant characteristics of the location in which the suspect is encountered. Such factors (moving away from the police in a heavy narcotic trafficking area) are entitled to consideration by officers in determining whether to make an investigative stop. *Id*.

The detailed tip bore sufficient indicia of reliability. This, along with Detective Garrett=s personal knowledge of appellant and his car, and appellant=s action upon the police arrival in the area described, furnished reasonable suspicion for an investigative stop based on the totality of the circumstances.

Appellant was told to return to his car and he did. Detective Gonzales then conducted a patdown search of appellant=s outer clothing to determine if he was armed. Gonzales explained that such action was for the safety of the officers. It was not unreasonable to conduct a limited search for weapons under the circumstances. As explained by the testimony, the officers knew that narcotics dealers are

**8**

frequently armed and dangerous. *See Carmouche*, 10 S.W.3d at 330. The pat-down of appellant=s person revealed no weapons or contraband.

For his safety and that of the other officers, Gonzales turned to determine if others were in appellant=s car. It was dark and the interior of the car was not lighted. Gonzales shined a flashlight through the front windshield and observed a handgun partially under the driver=s seat. After confirming by radio Detective Garrett=s assertion that appellant had a felony conviction and had only been recently released, appellant was arrested for unlawful possession of a firearm by a felon. *See* Tex. Pen. Code Ann. ' 46.04 (West Supp. 2002). The warrantless arrest was for a felony offense committed in the presence of a peace officer which is authorized by the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 1977). The facts also justified a warrantless arrest for unlawfully carrying a weapon which is a breach of the peace. *Id*.; *Turner v. State*, 901 S.W.2d 767, 771 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d). The officers then searched the front passenger compartment of appellant=s vehicle finding the handgun observed, $220 in cash, and the 19.3 grams of crack cocaine in the unlocked glove compartment. Incident to the warrantless arrest of appellant, did Detective Gonzales have the right to search this area of appellant=s car?

Warrantless searches are *per se* violations of the Fourth Amendment to the United States Constitution=s proscription of unreasonable searches unless they fall within one of the specifically established exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). One recognized exception to the Fourth Amendment=s warrant requirement is that an officer may search the area within the immediate control of an arrestee. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). The underlying rationale for the *Chimel*

**9**

rule is the need to remove any weapons that the arrestee might seek to use to resist arrest and to prevent the concealment or the destruction of evidence. *Id*. at 763. AWhere the arrestee was the occupant of a vehicle, however, police had difficulty in determining whether the passenger compartment was actually within the arrestee=s reach.@ *State v. Kelly*, 965 S.W.2d 866, 868 (Tex. App.CSan Antonio 1998, no pet.). In *New York v. Belton*, the United States Supreme Court confronted the difficulty in the application of *Chimel* to searches of automobiles (without the necessity of considering the automobile exception to the warrant requirement of the Fourth Amendment).[3] 453 U.S. 454 (1981).

In *Belton*, the Court stated:

> While the *Chimel* case established a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of ›the area within the immediate control of the arrestee= when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.

*Id*. at 460.

The Court then held that when an officer makes a lawful custodial arrest of the occupant of an automobile, the officer may conduct a contemporaneous search of the passenger compartment of that automobile. *Id*. *Belton* defined the passenger compartment of an automobile as being within the hypothetical immediate control of an occupant or recent occupant of the vehicle. *Kelly*, 963 S.W.2d at 869. A *Belton*-type vehicular search applies only when there has been a lawful custodial arrest of the

---

[3] *See New York v. Belton*, 453 U.S. 454, 463 (1981) (Rehnquist, C.J., concurring).

occupant or recent occupant of a vehicle. *See Gauldin v. State*, 683 S.W.2d 411, 414 (Tex. Crim. App. 1984).

*Belton* eliminated the officer=s need to determine what constitutes the area within the arrestee=s reach when the area includes the interior passenger compartment of a vehicle and the arrestee is its recent occupant. *Belton* did not, however, address who is a Arecent occupant@ for purposes of being subject to a *Belton*-type vehicular search rather than a *Chimel*-type search. *See Kelly*, 963 S.W.2d at 869. Most Texas cases involving a *Belton* search concern an arrestee who was a direct occupant of the vehicle when stopped or approached by the police. *Id*.

In determining whether appellant was a recent occupant of his automobile at the time of his arrest, we examine factors such as his temporal and spatial proximity to the vehicle. *See Gauldin*, 683 S.W.2d at 414. We also examine the record to determine if there is evidence of flight or an indication that appellant quickly exited his vehicle in an attempt to avoid contact with the police. *Kelly*, 963 S.W.2d at 869; *Pettigrew v. State*, 908 S.W.2d 563, 570 (Tex. App.CFort Worth 1995, pet. ref=d).

In reviewing the record without reiterating the facts, we conclude that the factors are sufficient to show that appellant was a recent occupant of his vehicle and that the *Belton*-type search incident to the warrantless arrest was proper. The fruits of that search were admissible into evidence. We are of the opinion that the same conclusion could be reached under *Michigan v. Long*, 463 U. S. 1032 (1983), where the protective search of the passenger compartment for weapons during an investigative detention was held valid and reasonable under the principles articulated in *Terry*.

Appellant has cited article I, sections nine, ten, and nineteen of the Texas Constitution. However, appellant has not offered argument, cited authorities, or given any reason why the state constitution confers greater protection than the federal constitution. Under these circumstances, appellate courts will not normally address state constitutional issues. *See Hall v. State*, 67 S.W.3d 870, 874 (Tex. Crim. App. 2002). Any state constitutional issue in this case was not adequately briefed. *See Brooks v. State*, 990 S.W.2d 278, 288 (Tex. Crim. App. 1999); *Muniz v. State*, 881 S.W.2d 238, 251-52 (Tex. Crim. App. 1993).

Appellant argues that from the totality of the circumstances, the police did not have justification for the stop and his detention. "More specifically, there is nothing in the record demonstrating that the police *personally* knew the C.I. [confidential informant] or that the C.I. had provided information in the past. . . . Nor is there any concrete evidence in the record that appellant was committing a crime or acting suspicious when the police approached . . . ." We find the argument to be without merit under this record.[4]

The trial court did not abuse its discretion in overruling the pretrial motion to suppress as contended in the sole point of error.

The judgment is affirmed.

---

[4] Interestingly, appellant=s trial counsel at the suppression hearing developed, over the State=s objection, that in three cases the confidential informant had provided true and correct information about narcotics to the police in the past, including one where he also made a controlled purchase of narcotics from a dealer.

John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion[*]

Affirmed

Filed:   August 30, 2002

Do Not Publish

---

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).